**Dr. Ellis L. BRESKMAN and Phoebe J. Breskman, h/w**

v.

**BCB, INC., B. Clint Bedsaul and Clint Floyd Bedsaul.**

**Civ. A. No. 88–3464.**

United States District Court, E.D. Pennsylvania.

Sept. 28, 1988.

William S. Gordon, Gordon, McCaney and Gordon, Philadelphia, Pa., for plaintiffs.

Edward L. McCandless, Jr., Steinberg & Gish, P.C., Philadelphia, Pa., for defendants.

### MEMORANDUM

NEWCOMER, District Judge.

This case arises out of an automobile/tractor-trailer accident which occurred in Maryland. The plaintiffs are Pennsylvania citizens and the defendants are North Carolina citizens and their wholly owned North Carolina corporation. Before me now is the choice of which state's tort law to apply: Pennsylvania, Maryland, or North Carolina.

*Factual background.*

Plaintiff, Ellis Breskman, is a resident of Pennsylvania who is an officer and employee of a corporation located in Pennsylvania. On the night of May 1, 1986, Mr. Breskman was en route from Greencastle, Pennsylvania to his home in Malvern, Pennsylvania.

Mr. Breskman's choice of route took him through Maryland. While in Maryland Mr. Breskman stopped at an Interstate 95 rest stop to sleep in his car.

Plaintiff alleges that while he was parked a tractor-trailer belonging to the defendants backed into his car. Defendants respond that plaintiff was negligently parked in a "for trucks only" area; and they claim that the driver of the truck could not have reasonably anticipated any automobile being parked in the location of the impact.

Plaintiffs argue that Pennsylvania tort law should apply to this litigation, while defendants assert that this Court should apply Maryland law. There is little mystery as to the interests of the parties in their respective arguments. The State of Maryland applies the doctrine of contributory negligence which precludes a plaintiff from recovery in court if he, in any manner or degree, contributed to his own injury. *See Harrison v. Montgomery Board of Education,* 295 Md. 442, 456 A.2d 894 (1983). Pennsylvania, on the other hand, applies the doctrine of comparative negligence. The Pennsylvania Legislature passed the Comparative Negligence Act in 1976, which provides:

> All actions brought to recover damages for negligence resulting in ... injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff ... where such negligence was not greater than the causal negligence of the defendant ...

42 Pa.Cons.Stat.Ann. § 7102.

The choice of law problem before the Court will have a significant impact on this case. If plaintiff Ellis Breskman, is found to be negligent in his choice of parking location at the time of the accident, then Maryland law would preclude any recovery. On the other hand, if I apply the Pennsylvania comparative negligence statute, then any such negligence by plaintiff would merely discount recovery unless the jury determined such negligence to constitute the lion's share of the cause of the injuries.

*Discussion.*

The choice of law rules of the forum state govern a United States District Court's choice of law determination. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Shields v. Consolidated Rail Corporation,* 810 F.2d 397, 399 (3d Cir.1987). Therefore, Pennsylvania's choice of law principles will determine which state's substantive law will apply to this accident case.

Under the traditional approach to the choice of law decision this case would be quite simple. The doctrine of lex loci delictus dictated that the law of the place where the wrong was committed should be the law of the case. However, in 1964 the Supreme Court of Pennsylvania set the current standard to be employed in choice of law determinations for tort cases. *See Griffith v. United Airlines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964). As the Third Circuit has correctly observed, Pennsylvania currently employs a flexible methodology to choice of law problems which combines the "most significant relationship" test espoused by the Restatement (Second) of Conflict of Laws and the "interest-analysis" approach attributed to Professor Brainerd Currie. *See Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1311–13 (3d Cir.1978). Thus, "the place having the most interest in the problem and which is most intimately concerned with the outcome is the forum whose law should apply." *Phillips v. General Motors Corporation,* Slip op. at 10 (E.D.Pa. March 28, 1988) [1988 WL 30971] citing *In re Complaint of Bankers Trust Co.,* 752 F.2d 874, 882 (3d Cir.1984). I shall follow the dictates of the Pennsylvania Supreme Court and procede through both analyses.

1. The Restatement (Second) analysis.

The Restatement (Second) of Conflict of Laws establishes the following principles to be applied in choice of law determinations in tort actions:

§ 145. General Principle.

(1) The rights and liabilities with respect to an issue in tort are determined by the

local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6. (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to the issue include:

(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicile, residence, nationality, place of incorporation and the place of business of the parties; and,

(d) the place where the relationship, if any, between the parties is centered.

§ 146. Personal Injuries.

In an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Section 6 of the Restatement (Second) determines the weight to be given each of the four contacts enumerated in § 145(2), supra, by providing general principles of choice of law analysis:

§ 6. Choice of Law Principles.

(2) ... the factors relevant to the choice of applicable rule of law include:

(a) the needs of the interstate and international system,

(b) the relevant policies of the forum,

(c) the relevant policies of the other interested states and the relevant interests of those states in determination of a particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predicability and uniformity of the result, and,

(g) ease in the determination and application of the law to be applied.

Thus, my analysis starts with the four contacts specified in § 145(2) which will be taken into account in applying the principles enumerated in § 6 to determine if Pennsylvania, Maryland, or North Carolina has the most significant relationship to the occurrence and the parties in this case. This portion of the analysis is quite simple. The contacts are as follows:

a) The place of the injury was Maryland.

b) The place where the action causing the injury took place was also Maryland.

c) The domicile of the plaintiffs is Pennsylvania. The domicile, place of incorporation and place of business for the defendants is North Carolina.

d) The place where the relationship between the parties is centered is Maryland since the only contact between the parties in this case is the accident itself.

If this were the extent of the analysis Maryland law would apply. However, this analysis is more than simply adding up contacts. The weight or quality of these contacts must be assessed against the backdrop of principles established in § 6 of the Restatement.

Several of the factors enumerated in § 6 are largely irrelevant in this case and therefore carry little weight in this analysis. Certainty, predictability and uniformity of result as set forth in § 6(2)(f) are of greatest importance when the parties are likely to take into consideration the legal consequences of their planned transactions, such as the legal effect of contracts or wills. Here, it is quite obvious that neither party planned their encounter on Interstate 95 in Maryland.

Similarly, the protection of justified expectations, § 6(2)(d), is also of light importance in this case. Since automobile accidents are unanticipated negligent acts, it is very unlikely that neither party anticipated the consequences of his conduct with a consideration of the substantive tort law of the State of Maryland. It is highly unlikely that the parties were even remotely aware of the differing tort laws of the states in which they travelled.

In addition, the ease in the determination and application of the law to be applied here, listed as a factor in § 6(2)(g) is of small concern. While the Court may be more familiar with the comparative negligence standard as applied in Pennsylvania, the contributory negligence doctrine, as applied in Maryland, offers no great challenge to the intellects of the Court or jury in this case.

In light of these three factors it is clear that the little weight should be given to the contacts with the State of Maryland. The fact that the accident occurred there is simply the result of random chance and offers little if any real connection of that state with the conflict between these parties.

The remaining considerations of § 6 focus on the tort law policies of the states involved. The basic policies underlying tort law are to provide compensation for the injured victims, and to deter intentional and deliberate tortious conduct by imposing punitive damages. Prosser and Keaton on Torts, § 2 (5th Ed.1984).

This conclusion leads, naturally, to the concern of the policies of the forum and other interested states as set forth in § 6(2)(b, c).

The basic tort law of a state is designed to protect the rights of the individuals who are residents or citizens of that state. Although the accident occurred in Maryland, none of the parties is a resident of that state. Thus, Maryland has little interest in the outcome of this suit. The states which do have a legitimate interest in this matter are Pennsylvania and North Carolina. These states have natural policy interests in protecting the rights of their citizens. The states where plaintiffs and defendants reside have a strong interest in making the plaintiff whole and deterring wrongful conduct. *See Griffith v. United Airlines,* 416 Pa. at 23–24, 203 A.2d 796. Therefore, the considerations provided in § 6 of the Restatement (Second) indicate that the states in which the parties reside carries the greatest weight of the four contracts enumerated in § 145(2) Restatement (Second).

Although neither party has raised the issue of the applicability of North Carolina's substantive tort law the Restatement (Second) analysis now dictates that I consider it. As it turns out North Carolina, as Maryland, applies the doctrine of contributory negligence in tort cases. *See Murrow v. Daniels,* 321 N.C. 494, 364 S.E. 2d 392 (1988). The policies of North Carolina and Pennsylvania with regard to negligence by a plaintiff which contributes to his injury are dramatically opposed. Pennsylvania's policy is to allow recovery so long as a plaintiff's negligence does not amount to more than 50% of the cause his injury. *See* 42 Pa.Cons.Stat.Ann. § 7102. Whereas North Carolina's doctrine states that a plaintiff is entitled to no recovery if his negligent acts in *any way* led to his injury. *See Murrow.*

I conclude that Pennsylvania's interest in allowing recovery for plaintiff's as its citizen, in this case, is roughly equal to that of North Carolina's interest in protecting its citizens from a suit by a plaintiff who was contributorily negligent.

I turn now to the Currie governmental interest analysis to resolve this standoff conflict.

2. The interest analysis.

The Pennsylvania Supreme Court has dictated that along with consideration of the Restatement (Second) analysis, an "interest analysis" approach be employed. This approach is often associated with Professor Brainerd Currie who was its leading advocate. This approach to the problem focuses on the interests of the governments whose laws are in conflict. The interest analysis as applied in *Griffith* was presented by Professor Currie in *Selected Essays on the Conflict of Laws,* 177, 183–84 (1963):

1. Normally, even in cases involving foreign elements, the court should be expected, as a matter of course, to apply the rule of decision found in the law of the forum.

2. When it is suggested that the law of a foreign state should furnish the rule of decision, the court should, first of all, determine the governmental policy expressed in the law of the forum. It should then inquire whether the relation

of the forum to the case is such as to provide a legitimate basis for the assertion of an interest in the application of that policy....

3. If necessary, the court should similarly determine the policy expressed by the foreign law, and whether the foreign state has an interest in the application of its policy.

4. If the court finds that the forum state has no interest in the application of its policy, but that the foreign state has, it should apply the foreign law.

5. If the court finds that the forum state has an interest in the application of its policy, it should apply the law of the forum, even though the foreign state also has an interest in the application of its contrary policy, and, a fortiori, it should apply the law of the forum if the foreign state has no such interest.

Step 5 in this process indicates that in the event of a standoff in interests of two states the law of the forum should apply. I note, that if one gives the greatest weight possible to the interests of North Carolina in this case it can be no greater than that of Pennsylvania's interest. Therefore the Currie analysis dictates that Pennsylvania law, as the law of the forum, will apply.

An appropriate order has already been filed.