Edward R. THOMAS, Appellee,

v.

Kenneth HANSEN d/b/a Hansen & Sons Welding and LeMars Mutual Insurance Company, Appellants.

No. 93–1193.

Supreme Court of Iowa.

Nov. 23, 1994.

Rehearing Denied Dec. 20, 1994.

Joe Cosgrove, Sioux City, and Thaddeus Cosgrove, Holstein, for appellants.

Sam S. Killinger and Michael P. Jacobs of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and SNELL, JJ.

HARRIS, Justice.

There are four issues in this workers' compensation appeal. The district court affirmed the industrial commissioner's award of benefits but, reversing a contrary agency decision, determined the award was not subject to indemnity rights. We affirm the allowance of benefits but reverse the district court's disallowance of indemnity.

Respondents are Kenneth Hansen d/b/a Hansen & Sons Welding (Hansen) and LeMars Mutual Insurance Company, Hansen's workers' compensation insurer (LeMars). Petitioner Edward R. Thomas, the injured worker, was not directly employed by Hansen. Thomas was employed by Leo Morgan at the time he was injured. Hansen and LeMars were called to answer for Thomas' workers' benefits by reason of a finding, challenged as the first issue in the appeal, that Thomas' employer was in a joint venture with Hansen. So the relationship between Morgan and Hansen is at the heart of the first issue. Facts on that issue were hotly contested, but the following substantial evidence supports the commissioner's findings.

The relationship between Hansen and Morgan stems from their association with a packing plant in Denison, Iowa, the site of Thomas' industrial accident. Hansen, a construction company, obtained an extensive construction contract with the plant, Iowa Beef Products, Inc. (IBP). Hansen in turn engaged Morgan for electrical work on the project. Morgan was prevented from separately contracting for the work with IBP because Morgan carried no workers' compensation insurance, a requirement imposed by IBP for all contractors at the plant. The factors making up the joint venture arose from this dilemma. Instead of obtaining the requisite insurance, Morgan arranged with Hansen to bill IBP through Hansen, who in turn paid Morgan. It is clear that the only purpose of this arrangement was to allow Morgan to be covered by Hansen's insurance. Morgan and Thomas previously had undertaken several projects for IBP in this manner.

On the very first day on the job, September 5, 1987, Thomas was installing an electrical conduit while standing on an I-beam. He slipped and fell on a cement floor from the height of about fifteen feet. Taken to a hospital, he underwent an operation for a broken femur neck. We are told a femur is a thigh bone and that its "neck" is the part below its "head," which in turn fits in a socket of a hip joint. The injury was severe; Thomas' healing period took approximately three years.

I. In challenging the finding of a joint venture, Hansen quite naturally focuses on the usual indicia of such a relationship. We have said there are five (with a caveat that each of the five need not necessarily appear):

(1) a common undertaking;

(2) a joint proprietary interest in the subject matter;

(3) a mutual right to control;

(4) a right to share in the profits; and

(5) a duty to share the losses.

*Farm–Fuel Prods. Corp. v. Grain Processing Corp.*, 429 N.W.2d 153, 156 (Iowa 1988). The deputy commissioner (whose findings were adopted by the commissioner) conceded the evidence was conflicting and that one version of it would support a contrary finding. Supporting the commissioner's finding of a joint venture, however, was testimony that Han-

sen acknowledged Thomas was his employee by paying him at the end of the day. There was evidence that Morgan and Hansen exchanged workers, and also that they exercised mutual rights of control over them. Morgan testified Hansen was to receive eight percent of a portion of his billings, although he denied he ever paid it. There was also evidence that Morgan told Thomas he was affiliated with Hansen. The strongest evidence, of course, was the coverage of Morgan's workers by Hansen's insurance.

For other purposes, all the foregoing might be of questionable adequacy to establish a joint venture. But, like the commissioner, we find it adequate here, especially in view of the purpose of the arrangement between the two contractors. It must be remembered that Hansen consented to the arrangement in order to help Morgan avoid his legal obligation to provide workers' compensation insurance for employees such as Thomas. Hansen is in a poor position to argue there was no joint venture. He is really arguing that he should escape from being tagged as a joint venturer because his efforts to aid Morgan in avoiding his insurance obligations, though deliberate, were inadequate. Under these circumstances we think a little adequacy should go a long way. We agree that substantial evidence supports the finding.

■ Hansen presents a fallback argument. A month before Thomas' injury, Morgan discontinued billing IBP through Hansen and started billing directly. Hansen contends any joint venture was thereby terminated.

■ The contention has superficial appeal in that joint ventures of indefinite duration are generally terminable at will. *Fitzhugh v. Thode*, 221 Iowa 533, 541–42, 265 N.W. 893, 898 (1936). Even so the commissioner rejected the contention on finding the joint venture persisted: Morgan still did not secure separate workers' compensation insurance coverage, and continued to rely on Hansen's. Without either agreeing or disagreeing with the theory, we choose to affirm the rejection on a different ground. The rule is that joint ventures cannot be terminated without notice to all its parties. *Id.* It is conceded there was no notice of termination here so the joint venture was not terminated.

■ II. The second issue challenges the commissioner's finding that Thomas suffered an injury to his body as a whole. Hansen insists the evidence supports only a scheduled member loss.

Thomas thinks, and the commissioner agreed, that his injury is akin to the "body as a whole" injury in *Lauhoff Grain Co. v. McIntosh*, 395 N.W.2d 834 (Iowa 1986). Although Hansen vigorously contends the facts here differ from *Lauhoff Grain*, we agree with the commissioner's view that they are sufficiently similar so that the *Lauhoff* holding is controlling.

McIntosh, the injured worker in *Lauhoff*, also fell on the job and also fractured the neck of his femur. McIntosh experienced a complication called avascular necrosis, a condition also experienced by Thomas. McIntosh's injury necessitated a hip replacement, and the evidence is that Thomas' injury may someday require a hip replacement or perhaps a hip fusion. Although McIntosh's "fracture" was limited to the neck of his femur, his "injury" or "impairment" extends beyond that and into the hip. The same is true with Thomas.

The district court did not err in concluding that substantial evidence supported the commissioner's finding regarding the extent of Thomas' injury.

■ III. The final issue in the appeal, to be addressed in division IV, involves Hansen's claim of indemnity against Thomas' recovery in a separate suit brought against IBP. At the threshold Hansen contends this issue was adjudicated in its favor in 1990, as a part of Thomas' application in this contested case before the commissioner. Appended to Thomas' application for the commissioner's approval of his settlement with IBP was a request for an order providing that Hansen and LeMars were not entitled to indemnity. *See* Iowa Code § 85.22(1) (1993). Thomas' application pointed out that neither Hansen nor LeMars had paid workers' compensation benefits. In granting approval of the settlement, however, the commissioner ruled that

**148**

Hansen and LeMars were entitled to indemnity.

Hansen and LeMars now contend the application to approve the settlement was a petition for a declaratory ruling under Iowa Code section 17A.9. They contend it became final because it was not appealed within thirty days. *See Bond v. Cedar Rapids Television Co.*, 518 N.W.2d 352, 357 (Iowa 1994) (administrative determination precluded litigation of the same issue in related court action).

 For a number of reasons the principle does not apply here. We need rely on only one. It is enough to point out there was no finality to the agency determination and therefore no reason for Thomas to appeal it. Iowa Code section 17A.9 is effectuated through chapter X of the uniform rules of agency procedure of the Iowa administrative code. No chapter X proceeding was implicated in the 1990 administrative ruling. Indeed it is always for the court, not the agency, to determine matters of indemnity. *Fisher v. Keller Indus., Inc.*, 485 N.W.2d 626, 628 (Iowa 1992).

The district court was correct in holding the indemnity question was not time barred and was for its determination.

IV. The commissioner determined that Hansen and LeMars were entitled to be indemnified (for their payments to Thomas) from Thomas' tort recovery from IBP. The district court disagreed, holding they were not so entitled because the rights to indemnity under Iowa Code section 85.22(1) are dependent on payment of compensation, and Hansen and LeMars refused to pay. This reversal was the final assignment of error.

In *Fisher v. Keller Industries*, 485 N.W.2d 626, 630 (Iowa 1992), we held that code section 85.22(1) did not allow a *credit* against workers' compensation benefits by reason of recovery in a third-party suit. In *Shirley v. Pothast*, 508 N.W.2d 712, 718 (Iowa 1993), distinguishing *Fisher*, we held that the section did allow for a *lien* against such a recovery for future payments. Whatever difficulty might have existed in reconciling *Fisher* and *Shirley*, the question was put to rest in *Christensen v. Pocket Lounge, Inc.*, 519 N.W.2d 401, 402–03 (Iowa 1994). In *Pocket Lounge* we held an insurer's notice of lien was valid to secure reimbursement from any third-party recovery for any future workers' compensation benefits. The trial court, not having the benefit of these later cases, may have been misled as to the extent of our *Fisher* holding. But *Shirley* and *Pocket Lounge* are now the settled law. The district court thus erred in reversing the commissioner's allowance of indemnity.

The district court decision is affirmed in part, reversed in part, and remanded for entry of a judgment in conformance with this opinion. Tax costs two-thirds to appellants and one-third to appellee.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**