Calvin VEASLEY and Sharon Veasley, Appellants,

v.

CRST INTERNATIONAL, INC., CRST, Inc., Rapids Leasing, Inc., and Lincoln Sales And Services, Inc., Appellees.

No. 95–925.

Supreme Court of Iowa.

Sept. 18, 1996.

John Riccolo and David L. Baker of Riccolo & Baker, P.C., Cedar Rapids, for appellants.

James E. Shipman, James M. Peters, and Webb L. Wassmer of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, for appellees.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

Plaintiff, Calvin Veasley, and his wife, Sharon Veasley, (the Veasleys) appeal from an adverse summary judgment in their action against defendant Rapid Leasing, Inc. (Rapid Leasing). Calvin Veasley was a relief driver for a commercial trucking venture and was seriously injured when a truck, owned by Rapid Leasing and driven by Veasley's coemployee Richard Powlistha, overturned in Arizona. The Veasleys commenced an action against Rapid Leasing based on the theory that, under Iowa Code section 321.493 (1993), as the vehicle's owner, it was liable for the negligence of Powlistha. Rapid Leasing urged that this theory of recovery was subject to the coemployee gross negligence standard of Iowa Code section 85.20 (1993). The district court agreed with this contention, concluded that it could not be established that Powlistha was grossly negligent, and dismissed the Veasleys' claims against Rapid Leasing.

In *Smith v. CRST International, Inc.*, 553 N.W.2d 890 (Iowa 1996), decided this same date, we hold that a coemployee defense, personal to a consent driver, may not be utilized by a motor vehicle owner in an action based on section 321.493. The district court's theory in dismissing the claims against Rapid Leasing was thus erroneous. We must consider, however, whether Rapid Leasing may nevertheless preserve its favorable judgment on other legal theories urged. These are its alternative claims that (1) Arizona law, which does not recognize the vicarious liability of a vehicle owner, should control; (2) because of the substantial relationship between the affiliated corporations, Rapid Leasing should be considered to be Calvin Veasley's employer; and (3) a 1995 amendment to section 321.493 should be applied retroactively to defeat the Veasleys' claim. We find no merit in any of these

contentions and conclude that, under the authority of the *Smith* case, the judgment must be reversed.

In addition to Rapid Leasing, three other defendants were named in this action. The Veasleys' claims against the other three were denied on grounds not at issue on this appeal. The four corporate entities involved were CRST International, Inc., an Iowa corporation with its principal place of business in Cedar Rapids; CRST, Inc., an Iowa corporation with its principal place of business in Cedar Rapids; Lincoln Sales and Service, Inc., an Iowa corporation with its principal place of business in Cedar Rapids; and Rapid Leasing, a Montana corporation with its principal place of business in Cedar Rapids. Lincoln Sales and Service, Inc. hires truck drivers and contracts with CRST, Inc. for their services. Lincoln hired both Calvin Veasley and Richard Powlistha. Rapid Leasing owns trucks and leases them to CRST, Inc. The truck involved in the present case was titled in the name of Rapid Leasing, registered in the State of Iowa and bore Iowa license plates. Other facts relevant to deciding this appeal will be discussed in connection with the legal issues presented.

## I. *The Choice of Law Issue.*

Rapid Leasing argues that Arizona law should apply in this case. That state has no owner liability statute and does not otherwise recognize vicarious liability based on vehicle ownership. Iowa has abandoned the *lex loci delicti* rule in which the law of the place of injury governs every issue in a tort action. We now follow the Restatement's "most significant relationship" methodology for choice of law issues. *Cameron v. Hardisty*, 407 N.W.2d 595, 597 (Iowa 1987); *Berghammer v. Smith*, 185 N.W.2d 226, 231 (Iowa 1971). The theory behind this approach is that rather than focusing on a single factor, "the court of the forum should apply the policy of the state with the most interest in the litigants and the outcome of the litigation." *Fuerste v. Bemis*, 156 N.W.2d 831, 834 (Iowa 1968).

The most significant relationship test is that which is stated as follows in the Restatement (Second) Conflict of Laws:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) Conflict of Laws § 145 (1971).

We recognized in *Joseph L. Wilmotte & Co. v. Rosenman Brothers,* 258 N.W.2d 317, 326 (Iowa 1977), that the situation-specific sections of the Restatement, such as section 145, incorporate the provisions set forth in section 6 thereof. These principles are as follows:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) Where there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result, and

(g) ease in the determination and application of the rule to be applied.

Restatement (Second) Conflict of Laws § 6 (1971). The issue in the present case is whether the owner's liability provisions of section 321.493 govern the Veasleys' claims against Rapid Leasing. We are convinced that in applying the most significant relationship test in accordance with the provisions of section 6 and section 145 of the Restatement the Iowa statute should be applied.

The factor involving ease of determination of the conflicting rules of law is of little importance in the present case. Either Rapid Leasing may be held liable or it may not. No esoteric or complex substantive laws are involved. *Cf. Reisch v. McGuigan,* 745 F.Supp. 56, 62 n. 5 (D.Mass.1990); *Breskman v. BCB, Inc.,* 708 F.Supp. 655, 659 (E.D.Pa. 1988); *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408, 414 (1973).

"Certainty, predictability, and uniformity of result" are also less important in automobile tort cases. Conflicting laws are a result of the combination of "a mobile society," *Cooney v. Osgood Machinery, Inc.,* 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277, 279 (1993), and America's federal system in which the states have primary control over the regulation of these matters will always work against uniformity.

The protection of justified expectations is, according to several modern authorities, of scant relevance in automobile accident cases. *Reisch,* 745 F.Supp. at 61; *Milkovich,* 203 N.W.2d at 412; *Gordon v. Gordon,* 118 N.H. 356, 387 A.2d 339, 340 (1978). According to the *Milkovich* court, "no one plans to have an accident." 203 N.W.2d at 412. Furthermore, Rapid Leasing is a nationwide trucking firm. The trip involved in this case commenced in California. California has an owner liability statute. Since twelve states have owner liability statutes, it would be reasonable for Rapid Leasing to expect liability and to protect itself accordingly. *Cf. Bryant v. Silverman,* 146 Ariz. 41, 703 P.2d 1190, 1195 (1985) (air carrier that flew over states that did not limit wrongful death damages could have protected itself). Rapid Leasing chose to register the truck involved in Iowa, and it chose to make Iowa its principal place of

business. It could reasonably have foreseen that Iowa law would apply in situations such as this.

Respect for interstate and international systems is maintained when the forum state, when choosing to apply its own law, has a "substantial connection" with the issue. *Milkovich,* 203 N.W.2d at 417. We believe, based on the deterrence policy underlying section 321.493, that Iowa has a substantial connection regarding the responsibility of all persons or corporations with a local nexus that loan or lease motor vehicles to other entities. Moreover, Iowa's owner liability law is not so abnormal that an application of Iowa law would greatly disrupt interstate order. At least twelve states have owner liability laws.

Regarding the policy factors recognized in Restatement section 6(2)(b), Iowa's statute was passed to recognize the dangers posed by the common use of automobiles. *See* Note, *Liability of Owner for Torts of Renter or Borrower of Automobile,* 13 Iowa L.Rev. 336, 338 (1928). This court has recognized that one of the purposes of section 321.493 is to make vehicle owners responsible for the actions of others to whom they have entrusted their motor vehicles. *Briner v. Hyslop,* 337 N.W.2d 858, 870 (Iowa 1983). Regarding the deterrent purpose of a similar statute, the Michigan Supreme Court has stated:

> In order to successfully modify conduct, the regulating force, whether it be criminal or civil, must be quickly, consistently and assuredly applied to the undesirable conduct. *To enforce the owners' liability statute on the basis of where the accident occurred would undermine the effectiveness of these important statutes.*

*Sexton v. Ryder Truck Rental, Inc.,* 413 Mich. 406, 320 N.W.2d 843, 856 (1982) (emphasis added).

In *Haggerty v. Cedeno,* 279 N.J.Super. 607, 653 A.2d 1166 (1995), a plaintiff from New Jersey was injured in New Jersey by a Florida resident driving a car that was registered in New York and rented from a Delaware corporation with its principal place of business in New York. New York had an owner-liability statute, and New Jersey did not. The New Jersey court noted that there were two policies underlying New York's owner liability statute: first, to assure that victims of automobile accidents have adequate compensation for their injuries, and second, to deter vehicle owners from making their motor vehicles available to those who might negligently operate them. It balanced the competing interests by concluding that New York's statute had a deterrent purpose, and there was no New Jersey defendant which needed to be protected by that state's fault-based scheme of owners' liability. Consequently, it held that New York law controlled. *Id.* 653 A.2d at 1169. Similar considerations cause us to conclude that section 321.493 is determinative of the Veasleys' rights in the present case.

Rapid Leasing contends that if the Veasleys' arguments are accepted an Iowa resident injured in Iowa by a truck registered in Arizona and owned by an Arizona trucking company would be unable to recover. Conversely, it argues, adoption of the Veasleys' choice of law contentions would lead to nationwide liability for Iowa trucking companies, even in the majority of states that do not have such a statute. This argument is premised on a misconception of how the most significant relationship rule operates. The Veasleys' argument is predicated upon a supposed outcome of the Restatement analysis to the facts of this particular controversy. The hypotheticals posed by Rapid Leasing would not necessarily have the outcomes that it suggests in other cases in which the several factors involved in the Restatement analysis might weigh differently.

## II. Whether Rapid Leasing May be Considered to be Calvin Veasley's Employer.

■ Rapid Leasing urges that it is so closely related to the other corporations affiliated with CRST, Inc. that it should be considered to be the employer of Calvin Veasley. It makes two arguments in this regard. First, it asserts that the industrial commissioner in a case involving CRST, Inc. and Lincoln Sales and Services, Inc. found that, although Lincoln had actually hired an employee, CRST, Inc. was that person's employ-

er under the workers' compensation act.[1] The basis for the commissioner's conclusion appears to have been that Lincoln was CRST, Inc.'s agent for hiring the employee and that CRST, Inc. possessed the actual right of control over the employee's activities. In the present case, Rapid Leasing has not demonstrated that it designated Lincoln or any of the other affiliated corporations as its hiring agent. Nor has it demonstrated that it possessed a right to control Calvin Veasley's activities. For this reason, its first argument must fail.

■ The second argument that Rapid Leasing advances is that all of these affiliated corporations are engaged in a joint venture so as to make them all the employer of Calvin Veasley. In support of this contention, Rapid Leasing relies in part on our decision in *Thomas v. Hansen*, 524 N.W.2d 145, 146–47 (Iowa 1994). We are convinced that, although employer status may be predicated on a joint-venture theory in some situations, this is not true of all joint ventures. In the *Thomas* case, the employment status of the injured employee had been specially tailored to meet the needs of two cooperating contractors with respect to the workers' compensation requirements of the company who was letting the contracts. In addition, neither of the putative employers was a corporation. In contrast, the relationship that Rapid Leasing holds with its corporate affiliates appears to have been the result of a conscious compartmentalization of the responsibilities of each for purposes of gaining corresponding advantages.

In *Wodogaza v. H & R Terminals, Inc.*, 161 Mich.App. 746, 411 N.W.2d 848 (1987), the Michigan court described a similar situation as follows:

> We are aware of the manifold business, financial, practical and even aesthetic considerations that may move a corporate entity to diversify its structure through the creation of subsidiary corporations. Within these considerations, however, should be a recognition of the obligations which arise as a consequence of such diversification.

*Id.*, 411 N.W.2d at 852. Similarly, in *Peterson v. Trailways, Inc.*, 555 F.Supp. 827, 832–33 (D.Colo.1983), the federal court stated "it is hardly unjust to require a parent corporation to recognize the existence of an entity which it has posited as separate and complete." We are convinced that the same is true with respect to separate corporate subsidiaries being required to assume the responsibilities of their separate and complete existence. We have recognized, in other contexts, that persons who have created or purchased corporate entities should not be permitted to disregard the corporate form in order to gain an advantage. *Sullivan Graphics, Inc. v. Board of Review*, 533 N.W.2d 213, 215 (Iowa 1995) (the acquisition of all stock in a corporation does not make acquiring party the owner of the assets for purposes of taxing statutes affecting corporate property); *Regal Ins. Co. v. Summit Guar. Corp.*, 324 N.W.2d 697, 703 (Iowa 1982) (sole shareholder of corporation could not disregard corporate form to gain bona fide purchaser status with regard to assets acquired); *Inn Operations, Inc. v. River Hills Motor Inn Corp.*, 261 Iowa 72, 83–84, 152 N.W.2d 808, 815 (1967) (parent company did not acquire taxpayer status in situation in which subsidiaries were the legal entities assessed with the tax). Rapid Leasing may not successfully assert that it was Calvin Veasley's employer.

### III. Whether 1995 Iowa Acts Chapter 136, Section 1 Applies Retroactively to Defeat the Veasleys' Claims.

■ As a final issue, we must consider whether 1995 Iowa Acts chapter 136, section 1 applies retroactively so as to defeat the Veasleys' claims against Rapid Leasing. That statute was an amendment to section 321.493. It provides in part:

> [I]f the vehicle is leased, "owner" means the person to whom the vehicle is leased, not the person to whom the certificate of title for the vehicle has been issued or assigned or to whom the manufacturer's or

---

1. The factual situation before the commissioner in that proceeding arose out of the transaction involved in *Smith*, 553 N.W.2d at 891.

importer's certificate of origin for the vehicle has been delivered or assigned.

1995 Iowa Acts ch. 136, § 1.

The Veasleys' cause of action against Rapid Leasing under section 321.493 was fully matured prior to the amendment of that statute in 1995. They argue that, consistent with our holding in *Thorp v. Casey's General Stores, Inc.*, 446 N.W.2d 457 (Iowa 1989), this claim may not be taken away by amending the statute after the injuries occurred. In the *Thorp* case, we held that it would be a denial of substantive due process to apply the 1986 "sold and served" amendment to the dram shop law so as to destroy claims that were fully matured under those statutes prior to the effective date of that amendment. In so doing, we stated:

> In summary, the 1986 amendment that deprived plaintiff of her cause of action does not fall within those categories of curative or emergency legislation that involve an overriding public interest and which can constitutionally be applied retroactively. Neither do we believe that the legislation was merely a change in procedure or remedy. Rather, we believe that plaintiff had a vested property right in her cause of action against Casey's and that the retroactive application of the 1986 amendment destroyed that right in violation of due process under both the federal and state constitutions.

*Id.* at 463. We believe that the statutory cause of action involved in the present case is also not of the curative or emergency legislation type that may be applied retroactively. Nor is it a mere change in procedure or remedy. The statute is the sole basis for a matured claim against Rapid Leasing by the Veasleys. If the amendment is given retroactive effect, it will completely eliminate that claim or any remedy pursuant thereto. We hold that the 1995 amendment may not be retroactively applied so as to affect the Veasleys' rights in the present case.

We have considered all issues presented on the appeal and conclude that the judgment for the district court granting summary judgment in favor of defendant Rapid Leasing, Inc. must be reversed. The case is remanded to that court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**