Thomas Lowell LINDEN, Jr., Plaintiff,

v.

CNH AMERICA LLC d/b/a Case Construction Equipment, and Indiana Mills & Manufacturing, Inc., a/k/a IMMI, Defendants.

No. 3:09–cv–00019–JEG.

United States District Court,
S.D. Iowa,
Davenport Division.

Jan. 26, 2010.

John M. Bickel, Shuttleworth & Ingersoll, Gregory M. Lederer, Lederer Weston Craig PLC, Cedar Rapids, IA, John Paul J. Gatto, Daniel A. Haws, Murnane Brandt, St. Paul, MN, Matthew R. King, Randall R. Riggs, Frost Brown Todd LLC, Indianapolis, IN, for Defendants.

Douglas C. Dumont, Michael J. Warshauer, Warshauer Poe Thornton PC, Atlanta, GA, Thomas L. Staack, Dutton Braun Staack Hellman Iversen, Chad Andrew Swanson, Dutton Braun Staack & Hellman PLC, Waterloo, IA, for Plaintiff.

Jason C. Palmer, Bradshaw Fowler Proctor & Fairgrave, Des Moines, IA, for Movant.

Patrick V. Waldron, Patterson Law Firm LLP, Des Moines, IA, for Claimant.

## ORDER

JAMES E. GRITZNER, District Judge.

This matter comes before the Court on motion by Defendant CNH America LLC (Case) for summary judgment.[1] Plaintiff Thomas Lowell Linden, Jr. (Linden) resists the motion. A hearing was held on December 11, 2009. The matter is fully submitted and ready for disposition.

## I. SUMMARY OF MATERIAL FACTS[2]

Indiana Mills & Manufacturing, Inc. (IMMI) is an Indiana corporation with its principal place of business in Westfield, Indiana. IMMI designed and manufactured the seat belt that was installed on the dozer Linden drove that gave rise to the present lawsuit. Case installed the seat belt on the dozer at its Burlington, Iowa, plant. In January 1997, Case sold and delivered the dozer to an Atlanta, Georgia, company; and, in 1998, Baker Woods Construction, a Georgia company, bought the dozer. Linden, then a resident of Georgia, was driving the dozer near Douglasville, Georgia, on March 12, 2007, when it overturned and Linden was injured. Linden sued IMMI and Case in the Northern District of Georgia on May 29, 2007, but voluntarily dismissed that complaint in March 2008. Linden then moved to Iowa.

On January 30, 2009, Linden commenced this diversity jurisdiction lawsuit on a theory of strict product liability alleging Case's dozer with IMMI's seat belt installed was defective in its design, manufacture, warnings, and instructions as well as alleging that Case was negligent. In the present motion, Case argues that under Iowa choice-of-law analysis, the statute of repose in either Indiana, Ind.Code Ann. § 34–20–3–1(a)–(b) (West 2009), or Geor-

---

1. A similar motion has been filed by Indiana Mills & Manufacturing, Inc., and is addressed by separate order.

2. On a motion for summary judgment, the Court views the evidence and inferences rea-

sonably drawn therefrom in the light most favorable to the nonmoving party. *E.g., Rakes v. Life Inv. Ins. Co. of Am.,* 582 F.3d 886, 893 (8th Cir.2009). Otherwise, the Court accepts facts not in dispute.

gia, Ga.Code Ann. § 51–1–11(b)–(c) (West 2009), should apply; Linden resists, arguing that the Iowa statute of repose, Iowa Code § 614.1(2A) (2009), should apply.

## II. DISCUSSION

### A. Standard for Summary Judgment

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Myers v. Lutsen Mtns. Corp.*, 587 F.3d 891, 893 (8th Cir.2009); Fed.R.Civ.P. 56(c). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir.2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). On a motion for summary judgment, the Court views the evidence and inferences in the light most favorable to the nonmovant. *Id.* The nonmovant "must set forth specific facts sufficient to raise a genuine issue for trial" and "may not rest upon mere denials or allegations in the pleadings." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Wells Fargo Fin.*

*Leasing, Inc. v. LMT Fette, Inc.*, 382 F.3d 852, 856 (8th Cir.2004).

### B. Choice of Law

"[T]he issue of the appropriate choice of law is a question of law for the court." *Jones v. Winnebago Indus., Inc.*, 460 F.Supp.2d 953, 959 (N.D.Iowa 2006) (citing cases). "Federal courts sitting in diversity apply the choice-of-law rules of the forum state" to determine the pertinent substantive law. *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir.2009). Under Iowa law, a statute of repose is "properly characterized as substantive, rather than procedural." *Cameron v. Hardisty*, 407 N.W.2d 595, 596 (Iowa 1987). However, choice-of-law analysis is only undertaken when a true conflict exists between the possible governing laws. *Modern Equip. Co. v. Cont'l W. Ins. Co.*, 355 F.3d 1125, 1128 n. 7 (8th Cir.2004).

A true conflict exists when there is an actual difference in the relevant laws of the different states. *Consul Gen. of Rep. of Indonesia v. Bill's Rentals, Inc.*, 330 F.3d 1041, 1045 (8th Cir.2003). The facts in this case reveal a true conflict exists. Case sold and delivered the dozer more than ten years but less than fifteen years before the accident that injured Linden occurred. Neither the Indiana nor the Georgia statute of repose allows Linden to commence an action more than ten years after the sale or delivery of the dozer.[3]

---

3. Indiana's statute of repose contains the following relevant provisions:

> (a) [T]his section applies in any product liability action in which the theory of liability is negligence or strict liability in tort.
> (b) Except as provided in section 2 of this chapter, a product liability action must be commenced: ... (2) within ten (10) years after the delivery of the product to the initial user or consumer.

Ind.Code Ann. § 34–20–3–1(a)–(b) (West 2009).

Georgia's statute of repose contains the following relevant provisions:

> (b)(1) The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended,

The Iowa statute of repose, on the other hand, allows Linden to commence an action up to fifteen years after the first purchase of the dozer.[4] Thus, here a true conflict arises because Linden's action would be barred under either Indiana or Georgia law but not under Iowa law. Therefore, the Court must resolve the choice-of-law issue. *See Jones,* 460 F.Supp.2d at 959.

■ Iowa has adopted the Restatement (Second) of Conflict of Laws "most significant relationship" methodology for choice-of-law issues. *Veasley v. CRST Int'l, Inc.,* 553 N.W.2d 896, 897 (Iowa 1996). The most significant relationship test is outlined in the Restatement as follows:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971). As stated in the test, Iowa

---

and its condition when sold is the proximate cause of the injury sustained. (2) No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury. (3) A manufacturer may not exclude or limit the operation of this subsection. (c) The limitation of paragraph (2) of subsection (b) of this Code section regarding bringing an action within ten years from the date of the first sale for use or consumption of personal property shall also apply to the commencement of an action claiming negligence of a manufacturer as the basis of liability.... Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer.

Ga.Code Ann. § 51–1–11(b)–(c) (West 2009).

4. Iowa's statute of repose contains the following relevant provisions:

Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:

. . . .

2A. With respect to products.

a. Those founded on the death of a person or injuries to the person or property brought against the manufacturer, assembler, designer, supplier of specifications, seller, lessor, or distributor of a product based upon an alleged defect in the design, inspection, testing, manufacturing, formulation, marketing, packaging, warning, labeling of the product, or any other alleged defect or failure of whatever nature or kind, based on the theories of strict liability in tort, negligence, or breach of an implied warranty shall not be commenced more than fifteen years after the product was first purchased, leased, bailed, or installed for use or consumption unless expressly warranted for a longer period of time by the manufacturer, assembler, designer, supplier of specifications, seller, lessor, or distributor of the product. This subsection shall not affect the time during which a person found liable may seek and obtain contribution or indemnity from another person whose actual fault caused a product to be defective.

Iowa Code § 614.1(2A) (2009).

incorporates the provisions of § 6 of the Restatement as follows:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971); *Veasley*, 553 N.W.2d at 897–98. The Court will evaluate each factor in turn.

### 1. Place of Injury

■ Case argues that this factor unequivocally favors application of Georgia's law while Linden argues that the place of injury is not determinative in a choice-of-law analysis.

■ The place of injury is of little importance when the state wherein the injury occurred has no other interest in the case. *See* Restatement (Second) of Conflict of Laws § 145 cmt. e ("[T]he place of injury will not play an important role . . . when the place of injury can be said to be fortuitous or . . . bears little relation to the occurrence and the parties with respect to the particular issues."); *Cameron*, 407 N.W.2d at 597 (finding that the Iowa statute of repose applied rather than Nebraska law in an automobile accident negligence case because Nebraska was merely the place of impact and none of the parties resided in Nebraska). Furthermore, "Iowa has abandoned the *lex loci delicti* rule in which the law of the place of injury governs every issue in a tort action." *Veasley*, 553 N.W.2d at 897.

Case argues that while this factor alone does not carry much weight, it becomes significant because Linden was a resident of Georgia at the time of the accident. The Court will consider Linden's residency in a separate factor. Linden argues that the place of injury is not determinative, but the Court must consider all of the factors. Because this is a product liability action, following the Restatement's directive to evaluate the contacts according to their relative importance with respect to the particular issue, the place of injury is much less important than the place where the conduct that caused the injury occurred. Restatement (Second) of Conflict of Laws § 145 cmt. e (1971). The Court does not give the place of injury decisive weight in recognition that Iowa has abandoned the *lex loci delicti* rule for choice-of-law analysis. *Veasley*, 553 N.W.2d at 897. With a stronger focus on where the challenged conduct occurred in a product liability action,[5] the Court has a diminished concern about Linden's possibly strategic relocation from George to Iowa and thus accepts the current state of the record that no party is currently a resident of Georgia.[6]

---

5. *See* text at pp. 7–8, *infra*.

6. The record contains some reference to Linden's intention to return to Georgia, but the Court examines the record based upon the current fact rather than potential subsequent behavior.

## 2. Place Where Conduct Causing Injury Occurred

Case argues that IMMI designed, manufactured, and marketed the allegedly defective seat belt in Indiana, while Linden asserts that the final product—the dozer equipped with an allegedly unsafe seat belt—was made or assembled in Iowa.

■ Federal courts interpreting Iowa law have held that the place where conduct causing the injury occurred in products liability cases is "where the design, manufacture, and marketing conduct relating to the allegedly defective product occurred." *Jones*, 460 F.Supp.2d at 970; *Johnson v. Am. Leather Specialties Corp.*, 578 F.Supp.2d 1154, 1167 (N.D.Iowa 2008). "In addition, in a products liability case, the place where the design, manufacture, and marketing conduct relating to the allegedly defective product occurred is of relatively greater weight than the 'place of injury.'" *Johnson*, 578 F.Supp.2d at 1167 (citing Restatement (Second) of Conflict of Laws § 145 cmt. e (1971) ("[W]hen the place of injury ... is fortuitous and, with respect to the particular issue, bears little relation to the occurrence and the parties, the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law.")).

Although the parties dispute the location of the design, manufacture, and marketing of the allegedly defective product, the Court must identify the allegedly defective product for purposes of the claims against Case. Case insists that the product at issue in the claims against Case is the seat belt only. However, Linden argues that the defective product designed and manufactured by Case is the dozer with the component seat belt installed, and that the failure resulted in connection with the seat belt in the normal operation of the dozer. This motion does not evaluate the merits of the case,[7] and the only potentially defective product designed and manufactured by Case is the dozer. The record indicates that Case designed the dozer in Iowa to be built with the IMMI seat belt and that Case actually manufactured the dozer with the seat belt installed in Iowa. The law requires a disciplined focus on the nature of the claimed product and what is alleged to have failed. In the context of this case, as clarified at oral argument, the Court must conclude the product at issue is the seat belt mechanism as installed on the dozer, which allegedly failed in the normal operation of the Case product. The only place where Case could have done anything to potentially cause injury in this action is Iowa.[8]

This factor, therefore, weighs heavily in favor of the application of Iowa law because this is a product liability action. *See id.*

## 3. Domicile, Residence, Place of Incorporation, and Place of Business

The third factor used to determine which state has the most significant relationship with the lawsuit is the ubication of

---

7. The Court does not opine on Case's ultimate argument that the seat belt is at the center of this case because the Court is only tasked in this motion with determining the applicable law and applying the relevant statute of repose after such a determination.

8. Case avers that under *Foster v. Day & Zimmermann, Inc.*, 502 F.2d 867 (8th Cir.1974), when a component part is the allegedly defective product, the place where conduct causing the injury occurred is where the component part was designed, manufactured, and marketed. Case's argument is unavailing since the *Foster* court never makes the distinction between a component part and final product in relation to which is the relevant product to consider in determining choice of law.

the parties. Restatement (Second) of Conflict of Laws § 145(2)(c). Section 145 comment e notes that the weight accorded to domicile, residence, place of incorporation, and place of business depends upon the extent to which they are "grouped" with other contacts. Restatement (Second) Conflicts of Laws § 145 cmt. e. The same comment also notes that a corporation's principal place of business is of more importance than its place of incorporation. *Id.* The Court will consider the residence of all parties to this motion.

Case is a Delaware corporation with its principal place of business in Wisconsin. Wisconsin, as Case's principal place of business, is more significant in this analysis but does not group with any other contacts. Linden, however, argues that because Case has extensive business operations in Iowa and actually built the dozer in Iowa, Iowa should be considered its place of business. Due to ambiguous usage of the term "place of business" in § 145, the Court finds more persuasive that the principal place of business is the relevant place of business. *See id.* Furthermore, it would duplicate the "place where conduct causing the injury occurred" analysis if the Court were to consider Case's business operations in Iowa relevant to this lawsuit for residency purposes. Therefore, since Wisconsin, as Cases's principal place of business, does not group with any other contacts, this factor is neutral as to Case.

▮ Linden argues that this factor favors application of Iowa law because he is a resident of Iowa. Case asserts that Linden should be considered a resident of Georgia for purposes of this motion. Case avers that Linden's residence at the time of injury is the relevant inquiry. Case cites both *Johnson* and *Jones* for the proposition that courts must look to the residence of the parties at the time of the accident. *See Johnson,* 578 F.Supp.2d at 1168 ("There is clearly a division here between Iowa as [plaintiff]'s residence *at the time of [plaintiff]'s accident,* and Wisconsin, defendant[ ]'s principal place of business.") (emphasis added); *Jones,* 460 F.Supp.2d at 970 (using nearly identical language as *Johnson* ). Other courts have also declared that residence at the time of injury is the relevant inquiry. *See, e.g., Hall v. Gen. Motors Corp.,* 229 Mich.App. 580, 582 N.W.2d 866, 870 (Mich.Ct.App. 1998) (after a survey of cases determining residence for choice-of-law purposes the court stated, "[t]he rationale that permeates these decisions is a judicial objective of preventing plaintiffs from forum shopping by post injury moves"); *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727, 730 (1967) (Traynor, CJ) ("[Plaintiff's] residence and domicile at the time of the accident are the relevant residence and domicile. At the time of the accident the plans to change the family domicile were not definite and fixed, and if the choice of law were made to turn on events happening after the accident, forum shopping would be encouraged."). Linden's move may or may not have been motivated by this litigation. However, the Court finds the rationale of *Hall* and *Reich* persuasive; therefore, it considers Linden's residence to be Georgia for purposes of this portion of the conflict of laws analysis. Linden's Georgia residence for purposes of this analysis groups with the place of injury; therefore, this factor favors application of Georgia law.

### 4. Place Where the Relationship Between the Parties is Centered

The parties agree, as does the Court, that there was no relationship between the parties relevant to consideration of this motion. *See* Restatement (Second) of

Conflict of Laws § 145(2)(d) (1971) (fourth factor to be taken into account is "the place where the relationship, *if any,* between the parties is centered") (emphasis added); *see also Johnson,* 578 F.Supp.2d at 1168 (noting that the Restatement contemplates that no relationship might exist and finding no relevant relationship between the parties such that the fourth factor did not favor application of any state's law). Therefore, this factor is neutral.

### 5. Summary of § 145 Factors

Under the foregoing analysis, it is clear that balancing the § 145 factors favors application of either Iowa or Georgia law. The place where conduct causing the injury occurred is Iowa, which weighs heavily in favor of applying Iowa law. Yet the injury occurred in Georgia, and Linden resided in Georgia at the time of the accident, favoring application of Georgia law. Although the place where conduct causing the injury occurred is given more weight than the place of injury, Linden's residence groups with the place of injury. *See Johnson,* 578 F.Supp.2d at 1167 (citing Restatement (Second) of Conflict of Laws § 145(2) cmt. e). Based on these contacts and the relative weight given to the place where conduct causing the injury occurred in product liability actions, Iowa has a slightly more dominant interest than Georgia, although both states have substantial connections. *Id.*

Case argues that *White v. Winnebago Indus., Inc.,* 718 F.Supp. 1429 (N.D.Iowa 1989), outlines a tie-breaker analysis that favors application of Georgia law. In *White,* Tennessee residents were injured in Tennessee, but the conduct causing the injury occurred in Iowa by an Iowa busi-

ness. *White,* 718 F.Supp. at 1432. To break the tie, the court looked to § 145 comment c, which states that when the tort rule is designed to provide compensatory rather than punitive damages, the state where the plaintiff resides may have more interest in the matter. *Id.;* Restatement (Second) of Conflict of Laws § 145 cmt. c (1971). Because the plaintiffs in *White* did not seek punitive damages and were residents of Tennessee, the court concluded that Tennessee's laws were designed to compensate and that Tennessee law should apply. *White,* 718 F.Supp. at 1433. The Court also stated, "Iowa, by not enacting a statute of repose, presumably seeks to compensate plaintiffs rather than punish defendants." *Id.* at 1432.

After *White* was decided, Iowa enacted a statute of repose,[9] thereby outdating the reasoning of *White.* Even so, *White* cuts against Case's position because statutes of repose are, *inter alia,* designed to protect manufacturers within a state, and Case is a manufacturer within Iowa. *See Albrecht v. Gen. Motors Corp.,* 648 N.W.2d 87, 91 (Iowa 2002) ("[S]tatutes of repose 'reflect the legislative conclusion that a point in time arrives beyond which a potential defendant should be immune from liability for past conduct.' ") (citing 51 Am.Jur.2d *Limitation of Actions* § 18). While the Iowa statute of repose does not render Case immune from suit in Iowa, Iowa's statute of repose implies an interest in providing a forum to Iowa manufacturers facing lawsuits. Additionally, Linden seeks punitive damages from Case. Hence, Iowa, "where the conduct took place[,] may be the state of dominant interest and thus that of most significant relationship."[10]

---

9. Iowa's statute of repose was enacted in 1997. Iowa Code Ann. § 614.1(2A).

10. *White* also states that because the plaintiffs in that case did not seek punitive damages,

the facts in *White* "do not undercut a finding that the rule of tort involved is compensatory rather than punitive." *White,* 718 F.Supp. at 1433. The facts here, however, would do

Restatement (Second) of Conflict of Laws § 145 cmt. c (1971). Finally, *White* did not consider the additional § 6 factors adopted by Iowa's choice-of-law methodology, so any tie-breaker is unnecessary until the § 6 factors are evaluated.

### 6. More Significant § 6 Factors

Iowa choice-of-law analysis incorporates the principles of Restatement (Second) of Conflict of Laws § 6 in evaluating the contacts taken into account by § 145. *Veasley*, 553 N.W.2d at 897–98. The Court's ultimate determination must be which state "has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 145(1) (1971); *accord Veasley*, 553 N.W.2d at 898. Comment b to Restatement (Second) Conflicts of Laws § 145 states as follows:

> Because of the relative insignificance of [the protection of justified expectations, the basic policies underlying the particular field of law, and certainty, predictability and uniformity of result] in the tort area of choice of law, the remaining factors listed in § 6 assume greater importance. These remaining factors are the needs of the interstate and international systems, the relevant policies of the forum, the relevant policies of other interested states and particularly of the state with the dominant interest in the determination of the particular issue, and ease in the determination and application of the law to be applied.

### a. The Needs of the Interstate System

"Respect for interstate and international systems is maintained when the forum state, when choosing to apply its own law, has a 'substantial connection' with the issue." *Veasley*, 553 N.W.2d at 899. The Iowa Supreme Court noted in analyzing this factor that the Iowa law at issue was "not so abnormal that an application of Iowa law would greatly disrupt interstate order." *Id.*

Linden argues that Iowa has a substantive connection with the issue because Case built the dozer and installed the seat belt in Iowa. Case argues that Georgia has a substantive connection because Linden was a resident of Georgia at the time of the accident, and the accident happened in Georgia. The Iowa Supreme Court in *Veasley* focused on the effect that the application of Iowa law would have on interstate order, rather than rehash the contacts evaluated under § 145. *Veasley*, 553 N.W.2d at 896–99; *accord Johnson*, 578 F.Supp.2d at 1169–70. Accordingly, the Court will not re-examine these arguments other than noting that both Iowa and Georgia have connections to the issues in this case.

Linden also argues that Iowa's statute of repose is not an outlier when considering all statutes of repose in effect in the United States, and that some jurisdictions have no such limitation. The Court agrees that Iowa's statute of repose cannot be considered abnormal, but neither can that of Georgia.[11] Both Georgia and Iowa have substantive connections to the issues in this case, and their laws are "not so abnormal that an application of Iowa [or Georgia] law would greatly disrupt interstate order." *Veasley*, 553 N.W.2d at 899.

---

exactly that, i.e. a finding that Georgia's tort laws are compensatory, favoring application of Georgia law, is undercut because Linden seeks punitive damages that are allowed in Georgia. Ga.Code Ann. § 51–12–5.1(e)(1) (2009). Thus the *White* tie-breaker does not favor application of Georgia law.

11. At least one other state has a fifteen-year statute of repose. *See* Tex.Code Ann. § 16.012. Multiple states have ten-year statutes of repose. *See, e.g.,* Ind.Code § 34–20–3–1; Neb. Rev. Stat. § 25–224(2).

### b. Relevant Policies of the Forum and Other Interested States

The relevant policies of the forum and other states are the second and third significant § 6 factors to consider in a tort case. *Jones,* 460 F.Supp.2d at 973.

Case argues that the underlying policy of the tort laws of Iowa and Georgia are the same such that an evaluation of those policies would not further the Court's inquiry beyond its § 145 analysis. The Court agrees that an underlying policy of the tort laws of Iowa and Georgia is to compensate victims and does not aid the choice-of-law determination. *See Jones,* 460 F.Supp.2d at 973; *Amalgamated Transit Union Local 1324 v. Roberts,* 263 Ga. 405, 434 S.E.2d 450, 451 (1993). Linden argues, however, that the Court should evaluate the policies underlying each state's statute of repose, which shows that Iowa has the most interest in applying its law in the suit against Case.

Georgia's statute of repose was enacted to stabilize insurance underwriting and eliminate stale claims. *Love v. Whirlpool Corp.,* 264 Ga. 701, 449 S.E.2d 602, 605 (1994). The concern for stabilizing insurance underwriting was "generated by the open-ended liability of manufacturers." *Id.* The second purpose, eliminate stale claims, may have arisen out of concern for the courts or manufacturers; but since no Georgia manufacturer appears in this case, and the case is not being litigated in Georgia's courts, the purposes of Georgia's statute of repose would not be offended by applying another state's law, and this factor does not favor applying Georgia law.

Iowa's statute of repose was enacted to serve the following purposes:

[T]o prevent the trial of stale claims because evidence gathering is usually made more difficult by the passage of time. In addition, statutes of repose reflect the legislative conclusion that a point in time arrives beyond which a potential defendant should be immune from liability for past conduct. Such statutes avoid the difficulties in proof and recordkeeping that suits involving older claims impose and protect certain classes of persons from claims that are virtually indefensible after the passage of time.

*Albrecht,* 648 N.W.2d at 91 (internal citations and quotations omitted). Iowa's statute of repose, therefore, was enacted to protect manufacturers that build products in Iowa. Again, although Case would not be protected by Iowa's statute of repose in this lawsuit, the underlying purpose of Iowa's statute of repose is to protect manufacturers such as Case and provide a forum for actions against them. It would be repugnant to Iowa public policy to subject Case, an Iowa manufacturer, to Georgia's laws when Georgia does not have a more compelling connection to the parties and issues in this lawsuit than Iowa. Here, Iowa's enactment of a statute of repose is a two-edged sword, and Case cannot be heard to complain that the Court determined that it should be subject to Iowa's statute of repose only because Georgia offers greater protection. Because Iowa has a slightly dominant interest under § 145, and Georgia policy would not be offended by applying Iowa law, this factor favors application of Iowa law.

### c. Ease of Determination and Application of Law

Since application of any statute of repose is merely a mathematical exercise, this factor is neutral.

### 7. Other § 6 Factors

The Iowa Supreme Court recognized that the other § 6 factors may be of little importance in tort cases. *See Veasley,* 553 N.W.2d at 898–99; *Jones,* 460 F.Supp.2d

at 974–75 (finding, in a products liability case applying Iowa choice-of-law rules, the remaining factors carried little to no weight). Accordingly, these factors are also neutral.

### 8. Summary

Under Iowa's choice-of-law analysis, the Court finds that Iowa has the most significant relationship to the parties and issues in this case for purposes of this motion. Case designed, manufactured, and marketed the dozer with the seat belt installed in Iowa, and Iowa has an interest in applying its product liability laws to products manufactured in Iowa. While Linden may be considered a resident of Georgia for purposes of this motion, and the injury occurred in Georgia, those facts do not outweigh Iowa's interest manifested by application of the most significant relationship methodology. Accordingly the Court will apply Iowa law to Linden's claims against Case.

## III. CONCLUSION

For the reasons stated, Iowa's law applies to the claims against Case. Iowa's statute of repose bars suits commenced more than fifteen years after a product was first purchased. Iowa Code Ann. § 614.1(2A). The dozer in this case was purchased in 1997, and this suit was commenced in 2009, less than fifteen years later. Thus, Linden's suit is not barred under Iowa law. Therefore, Defendant Case's Motion for Summary Judgment (Clerk's No. 50) must be **denied.**

**IT IS SO ORDERED.**