Argued and submitted April 16, affirmed July 25, reconsideration denied
September 26, petition for review denied November 6, 1990 (310 Or 547)

In the Matter of the Compensation of
Marvin H. Allen, Claimant.

Marvin H. ALLEN,
*Petitioner,*

*v.*

AMERICAN HARDWOODS
and SAIF Corporation,
*Respondents.*

(TP-87028; CA A61751 (Control))

In the Matter of the Compensation of
Hanlon Dodgion (Deceased), Claimant.

Judy DODGION,
Beneficiary of Hanlon Dodgion, Deceased,
*Petitioner,*

*v.*

AMERICAN HARDWOODS
and SAIF Corporation,
*Respondents.*

(TP-87027; CA A61754)
(Cases Consolidated)

795 P2d 592

James L. Francesconi and Francesconi & Associates, Portland, filed the brief for petitioners.

Jas Adams, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Graber, Presiding Judge pro tempore, and Riggs and Edmonds, Judges.

RIGGS, J.

### RIGGS, J.

The issue in this case is whether the Workers' Compensation Board erred in holding that, under Oregon law, SAIF has a valid lien against the proceeds of claimants'[1] third-party settlements after an accident that occurred in Michigan. We affirm.

Claimants Dodgion and Allen were long haul truck drivers for American Hardwoods, an Oregon employer covered by SAIF. In June, 1984, they were involved in a head-on collision with another truck in Michigan. Dodgion was killed, and Allen was seriously injured. Allen and Dodgion's surviving spouse, the beneficiary of his estate, filed workers' compensation claims in Oregon. SAIF accepted the claims and paid Allen $137,741 and anticipated paying him another $20,596, for a total of $158,337. SAIF also paid $31,568 to Dodgion's beneficiary, and anticipated paying an additional $136,561, for a total of $168,130.

In March, 1986, claimants brought actions against the other truck driver's estate and Twin Ports Grocery Company, the owner of the other truck.[2] Both claims were eventually settled. Allen's "Settlement Agreement" provided that the settlement was for non-economic loss only and contained an express choice of laws clause adopting Michigan law. Under Michigan law, a workers' compensation carrier cannot reach the proceeds of a claimant's third-party settlement that are for noneconomic loss.[3] *Great American Ins. Co. v. Queen,*

---

[1] "Claimants" refers both to Allen and to Dodgion's surviving spouse, the beneficiary of his estate. The Board issued two third-party distribution orders, and the cases were consolidated on review.

[2] Under Michigan law, tort liability for motor vehicle accidents has been generally abolished and replaced with a no-fault system of personal protection benefits that limit recovery to certain categories of loss. One of those categories is noneconomic loss. Although the other truck driver and Twin Ports Grocery were Minnesota residents, they were covered insured under a policy that contained a written certification that provided them with the rights and immunities of Michigan's no-fault law.

[3] In Michigan, a workers' compensation carrier is not entitled to reimbursement for the type of expenses that SAIF paid. *Great American Ins. Co. v. Queen, supra.* Under that state's law, a carrier's right to reimbursement from a third-party settlement is restricted to only those proceeds that are compensation for types of damages that are common to both the tort action and to benefits that it has paid on the compensation claim.

410 Mich 73, 300 NW2d 895 (1980). Dodgion's "Release of All Claims" does not include a choice of laws clause.[4]

SAIF asserted that it had valid liens against all of Dodgion's settlement proceeds and against Allen's proceeds for the smaller of $158,337 or its statutory distributional share. In November, 1987, SAIF petitioned the Board for a third-party distribution order declaring its lien against the settlement proceeds valid and distributing them in accordance with ORS 656.593(1) and (3).[5]

Relying on sections 6 and 145 of the *Restatement*

---

[4] The record contains two copies of what purports to be Dodgion's release. One copy has a paragraph that states: "It is further agreed to by the parties that all of the consideration paid to the plaintiff * * * is consideration for non-economic loss. The parties agree that no portion of the settlement is consideration for economic loss." That provision is below the signature line and in a different typeface than the rest of the document. The other copy has no such paragraph. No explanation of the discrepancy is in the record.

[5] ORS 656.593(1) and (3) provide:

"(1) If the worker or the beneficiaries of the worker elect to recover damages from the employer or third person, notice of such election shall be given the paying agency * * *. The proceeds of any damages recovered from an employer or third person by the worker or beneficiaries shall be subject to a lien of the paying agency for its share of the proceeds as set forth in this section and the total proceeds shall be distributed as follows:

"(a) Costs and attorney fees incurred shall be paid, such attorney fees in no event to exceed the advisory schedule of fees established by the board for such actions.

"(b) The worker or the beneficiaries of the worker shall receive at least 33-1/3 percent of the balance of such recovery.

"(c) The paying agency shall be paid and retain the balance of the recovery, but only to the extent that it is compensated for its expenditures for compensation, first aid or other medical, surgical or hospital service, and for the present value of its reasonably to be expected future expenditures for compensation and other costs of the worker's claim under ORS 656.001 to 656.794. Such other costs include assessments for reserves in the Insurance and Finance Fund, but do not include any compensation which may become payable under ORS 656.273 or 656.278.

"(d) The balance of the recovery shall be paid to the worker or the beneficiaries of the worker forthwith. Any conflict as to the amount of the balance which may be retained by the paying agency shall be resolved by the board.

"* * * * *

"(3) A claimant may settle any third party case with the approval of the paying agency, in which event the paying agency is authorized to accept such a share of the proceeds as may be just and proper and the worker or the beneficiaries of the worker shall receive the amount to which the worker would be entitled for a recovery under subsections (1) and (2) of this section. Any conflict as to what may be a just and proper distribution shall be resolved by the board."

*(Second) Conflict of Laws* (1971), the Board concluded that "claimant's right of tort recovery against the third parties and the third parties' liabilities to claimant were determined by Michigan law." It reasoned that, with respect to those issues, Michigan had the "most significant contacts" with the parties and the subject matter of their dispute. However, the Board concluded that Oregon law governs the issue of SAIF's rights to share in the settlement proceeds:

> "That issue concerns the relationship of an Oregon worker, and an Oregon workers' compensation carrier and, indirectly at least, an Oregon employer. The state of Michigan had no substantial interest in whether SAIF is able to recover all, some or none of its compensation payments from claimant's proceeds. The financial, social and legal impacts of that determination are centered in Oregon. Under these circumstances, Oregon has the most significant relationship to the parties and the subject matter of their dispute and its law should control. *See* Restatement (Second) of Conflict of Laws §§ 6, 145(2). The law of Michigan, like the law of any other foreign jurisdiction, is advisory only."

The Board then concluded that the liens were valid and ordered distribution.

Claimants assign error first to the Board's conclusion that Oregon, rather than Michigan, law applies and, second, to the conclusion that SAIF's lien may be satisfied out of the settlement proceeds. They argue that, under general choice of law principles, because Michigan has the most significant contacts with the parties and the subject matter of the dispute, its law controls. *Restatement (Second) Conflict of Laws* §§ 6, 145. Therefore, claimants contend that, under Michigan law, SAIF's lien is invalid, because their recovery was for noneconomic loss only.

We conclude that the Board correctly held that Oregon law governs the validity of SAIF's liens on the third-party settlement proceeds. Although the Board relied on general choice of law principles, enumerated in sections 6 and 145, section 185 of the *Restatement* is directly on point. It provides:

> "The local law of the state under whose workman's compensation statute an employee has received an award for an injury determines what interest the person who paid the award has in any recovery for tort or wrongful death that the employee

may obtain against a third person on account of the same injury."

Section 185 is in accord with Larson, who states:

"As to third party actions, if compensation has been paid in a foreign state and suit is brought against a third party in the state of injury, the substantive rights of the employee, the subrogated insurance company and the employer are ordinarily held governed by the law of the foreign state." 4 Larson, *Workmen's Compensation Law* 16-171, § 88.00 (1989).

Oregon has a vital interest in applying its law to determine the interest of an Oregon workers' compensation carrier in settlement proceeds that are obtained by Oregon workers. Claimants obtained workers' compensation in Oregon. Under Oregon law, SAIF, as the paying agency, is entitled to reimbursement from the proceeds of any settlement for the amounts that it paid on behalf of the injured and deceased workers. ORS 656.580(2); ORS 656.593(1) and (3). The provision in the agreement that the settlement was for noneconomic loss only is irrelevant. Although that limitation would apparently protect the settlement proceeds from the reach of workers' compensation carriers under Michigan law, *see Great American Ins. Co. v. Queen, supra,* the Oregon legislature has made no such exception.

We also reject claimants' suggestions that the express choice of laws provision in Allen's settlement agreement, adopting Michigan law, is evidence of the parties' recognition of that state's greater interest in the enforcement of the agreement. SAIF was not a party to the agreement, and the parties may not contract to circumvent a fundamental policy of Oregon law by choosing the law of another jurisdiction. *See Young v. Mobil Oil Corp.,* 85 Or App 64, 67-73, 735 P2d 654 (1987). The underlying public policy of the third-party distribution statutes and the purpose of the statutory liens

"is to allocate *whatever* the claimant recovers between him and the paying agency and to provide reimbursement to those responsible for statutory compensation of injured workers when damages for settlements are obtained against the persons whose act caused the injuries." *Schlect v. SAIF,* 60 Or App 449, 456, 653 P2d 1284 (1982). (Emphasis in original.)

Affirmed.