MICHAEL EBERHART CONSTRUC-
TION and United Fire and Casu-
alty, Appellants,

v.

Trampes CURTIN, Appellee.

No. 02–2083.

Supreme Court of Iowa.

Jan. 22, 2004.

J. Richard Johnson of White & Johnson,
P.C., Cedar Rapids, for appellants.

David L. Baker and Timothy Semelroth of Riccolo & Baker, P.C., Cedar Rapids, for appellee.

LARSON, Justice.

Iowa's workers' compensation commissioner awarded compensation benefits to Trampes Curtin, a former employee of Michael Eberhart Construction. The district court affirmed the award, and Eberhart and its insurance carrier, United Fire and Casualty (collectively the employer), appealed. The principal issues on appeal involve the commissioner's (1) application of the "odd-lot doctrine," (2) finding the claimant to be permanently and totally disabled, and (3) the district court's denial of a lien to Eberhart on Curtin's proceeds under an underinsured-motorist insurance policy. We affirm in part, reverse in part, and remand.

## I. *Facts and Prior Proceedings.*

Trampes Curtin, foreman of Eberhart's concrete crew, was traveling on the job when the hood of the company truck flew open, and Curtin got out to fix it. While he was standing in front of the truck, a vehicle driven by a Karen Cooper struck the truck, causing both the truck and the Cooper vehicle to run over Curtin. As a result of Curtin's injuries, his doctor imposed these restrictions on his activities: no prolonged standing or sitting, no lifting over twenty pounds on a one-lift basis, no lifting over ten pounds on a frequent-lift basis, no work with his arms in front of him or over his head, no repetitive bending or stooping, and no work on scaffolds, ladders, or roofs.

These restrictions rendered Curtin a poor prospect for any employment requiring stringent physical activity, and this was the consensus of opinion among these parties and their witnesses. Curtin considered becoming a car salesman and

hoped someday to own his own car lot. He decided to go back to school, despite his poor academic performance in the past and his limited intellectual level. (He had a D average in high school and an IQ of 94. In twelfth grade, he was considered learning disabled, and he was referred to the Iowa Division of Vocational Rehabilitation.) According to Curtin's testimony, his main problem is reading comprehension.

Despite these learning handicaps, Curtin was accepted as a student at Northeast Iowa Community College at its Calmar campus and performed well. He attended college for thirty hours, earning a cumulative grade point of 2.94. In Curtin's first semester, his courses included Principles of Management and Introduction to Business. His instructors rated his work from average to excellent, giving Curtin a combined grade point average (GPA) of 2.835. In the next semester, Curtin took Psychology of Human Relations, Principles of Marketing, Business Ethics, and Business Law. His instructors rated his work from above average to excellent. His GPA that semester was 3.583. In the next semester, Curtin took General Psychology, Microeconomics, Mathematics Fundamentals, and Introduction to Microcomputers, earning a GPA of 2.223. His instructors rated his performance as average to above average. Curtin's total combined GPA for the three semesters he attended college was 2.954, which was close to a B average. This was the picture portrayed in the discovery provided to the employer prior to the workers' compensation hearing.

John Suter, a former certified rehabilitation counselor, and Dr. Karma Gibson, a vocational case manager with Job Search, expressed opinions, based on Curtin's academic performance, that he had potential as a salesman, fast-food worker, management trainee, assistant manager, or electronics assembler. As the work-

ers' compensation commissioner noted in his ruling, these experts "placed great emphasis on the claimant's success in community college in their opinion[s] that the claimant could be retrained and become employable." However, according to the commissioner's ruling, the true picture of Curtin's academic abilities was quite different. At the workers' compensation hearing, Curtin and his girlfriend, Lisa Eberhart (daughter of Curtin's employer), testified that Curtin's grades were misleading; they were based on take-home tests, some of which Lisa had taken for him, and Lisa had provided help on virtually all of his college work. In fact, Lisa testified Curtin's reliance on her help was so substantial he quit college when she started to go to college herself full-time and did not have the time to spend on Curtin's courses. This was in stark contrast to Curtin's deposition testimony in which he said he quit college because his back hurt him in class, he was tired of the commute to class, and he decided he did not like college after all. The truth, it appears, is that Curtin does not have the intellectual skills or intelligence he had claimed prior to the arbitration hearing. The effect of this evidence presented at the hearing cast serious doubt on Curtin's future employability based on additional education.

The employer understandably claims it was surprised by the change in Curtin's evidence. In his deposition, Curtin had stated that Lisa had encouraged him to answer the open-book tests and that she had suggested sources he could consider to answer the questions. He denied that she actually did the work for him. At the arbitration hearing, however, the evidence was quite clear she actually took some of the tests for him.

In addition to confronting this surprise development, the employer faced a request by Curtin, after the record was closed, to amend his petition to assert the "odd lot" doctrine. The employer resisted the amendment, unsuccessfully, and it now raises the amendment as an issue on appeal.

## II. *The Odd–Lot Amendment.*

 Under [the odd-lot] doctrine a worker becomes an odd-lot employee when an injury makes the worker incapable of obtaining employment in any well-known branch of the labor market. An odd-lot worker is thus totally disabled if the only services the worker can perform are "so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist."

*Guyton v. Irving Jensen Co.*, 373 N.W.2d 101, 105 (Iowa 1985) (quoting *Lee v. Minneapolis St. Ry.*, 230 Minn. 315, 320, 41 N.W.2d 433, 436 (1950)). In adopting the doctrine, we noted that

[b]efore today we were not required to decide whether a presumption exists that suitable work is available to an odd-lot employee or whether evidence must be adduced on that subject.

We adopt the burden of proof allocation enunciated in [a workers' compensation authority] statement of the general rule. We emphasize that this rule merely allocates the burden of production of evidence. It is triggered only when the worker makes a prima facie case for inclusion in the odd-lot category:

It is normally incumbent upon an injured [worker], at a hearing to determine loss of earning capacity, to demonstrate a reasonable effort to secure employment in the area of . . . residence. Where testimony discloses that a reasonable effort was made, the burden of going forward with evidence to show the availability of suitable em-

ployment is on the employer and carrier.

*Id.* (quoting *Employers Mut. Liability Ins. Co. v. Indus. Comm'n,* 25 Ariz.App. 117, 119, 541 P.2d 580, 582 (1975)).

*Guyton* stated the rationale for this burden-shifting rule:

> [T]he employer ordinarily is in a better position than the worker to determine whether the labor market offers opportunities to persons in the odd-lot category. The overriding reason for requiring evidence of employment opportunities is because there is no presumption that merely because the worker is physically able to do certain work such work is available.

373 N.W.2d at 106 (citations omitted).

> The practical effect of this burden-shifting rule is that when a claimant is an odd-lot employee, we presume that no jobs are available unless the employer introduces evidence of such work. Nevertheless, the ultimate burden of persuasion on the issue of industrial disability always remains on the employee.

*Second Injury Fund v. Nelson,* 544 N.W.2d 258, 267 (Iowa 1995) (citing *Guyton,* 373 N.W.2d at 105). The Idaho court explained the odd-lot doctrine by contrasting it with proof of industrial disability in other cases:

> There are two methods by which a claimant may establish a permanent disability. First, a claimant may prove a total and permanent disability if his or her medical impairment together with the nonmedical factors total 100%. If the Commission finds that a claimant has met his or her burden of proving 100% disability via the claimant's medical impairment and permanent nonmedical factors, there is no need for the Commission to continue. The total and permanent disability has been established at that stage.

> The second method by which a claimant may prove total and permanent disability is for the claimant to demonstrate that he fits within the definition of an odd-lot worker. The odd-lot doctrine comes into play when the claimant has proved something less than 100% disability. The odd-lot category exists for those persons who are so injured as to be unable to perform services other than "those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist."

*Boley v. Indus. Special Indem. Fund,* 130 Idaho 278, 281, 939 P.2d 854, 857 (1997) (quoting *Dehlbom v. Indus. Special Indem. Fund,* 129 Idaho 579, 582, 930 P.2d 1021, 1024 (1997)) (other citations omitted).

■ Curtin argues that it did not matter that the deputy allowed the odd-lot amendment because his evidence established total and permanent disability with or without application of the odd-lot doctrine. While this argument might have merit if the arbitration decision were based on both theories, the fact is that it was not; the deputy based his ruling solely on the odd-lot doctrine. The deputy stated in his ruling:

> The claimant's undisputed impairment and work restrictions preclude him from returning to those jobs for which he is suited based upon his skills, education, and experience. The claimant's remaining physical abilities are limited to light duty to sedentary work. However, given his current level of education, it is unlikely that he will be able to find such a position without substantial training. *Thus, the claimant has made a prima facie showing that he is in the odd-lot category.*

Defendants place emphasis on the claimant's success in community college;

however, such emphasis is misplaced where that success was due at least in part to the assistance he received from Ms. Eberhart. There is no doubt that such assistance was critical to the claimant obtaining better than a C average given the claimant's learning disability, grades and test scores in high school. The defendants speculate that if claimant were to continue in community college with substantial assistance from the college or other sources, that the claimant would be able to complete that program and acquire skills that would make him employable again. *Such speculation cannot be relied upon to meet the defendants' burden of showing that suitable employment exists that the claimant can do.*

(Emphasis added.)

The emphasized language is clearly odd-lot language, and it makes it clear this was the basis for the arbitration ruling. In fact, on the intra-agency appeal to the commissioner, the commissioner identified the disability issues as only (1) whether the claimant should have been allowed to amend his petition to assert the odd-lot doctrine and (2) whether the claimant is an odd-lot employee. (The commissioner noted a third issue, regarding the employer's right to subrogation, which we discuss later.)

Curtin argues the amendment could not reasonably have been a surprise to the employer because the state of the prehearing record was such that the employer should have expected the odd-lot argument to be made, based on Curtin's poor performance in high school and his mental limitations. This, of course, is subject to some doubt because Curtin's performance in college was ostensibly good, and the employer relied on it. In any event, the odd-lot doctrine was not injected into the case until the evidence was closed. If the

potential reliance on the odd-lot doctrine was apparent to the employer, as Curtin claims, it certainly should have been apparent to Curtin, who had the responsibility to raise it.

The petition did not raise the odd-lot issue, and the prehearing conference report did not raise it. The hearing assignment order, which was entered prior to the hearing, specifically provided that the only issues to be considered at the hearing would be those identified in the prehearing conference report, which did not mention the odd-lot doctrine. The parties pursued mediation, but the theory was not mentioned.

Under the odd-lot doctrine, once the claimant establishes a prima facie case of entitlement, the burden of going forward with evidence that jobs are available shifts to the employer. *Guyton*, 373 N.W.2d at 106. Here, Curtin faults the employer for not making such a showing, despite the fact the employer did not know it would be bound to carry the burden of production until after the record was closed.

*Weishaar v. Snap–On Tools Corp.*, 506 N.W.2d 786 (Iowa Ct.App.1993), is a very similar case. In that case, the claimant attempted to amend her petition to assert the odd-lot doctrine in her posthearing brief. The commissioner ruled the amendment was not timely, and the district court affirmed. The court of appeals stated:

> We find that the commissioner and the district court correctly concluded the odd-lot doctrine issue was not timely raised and therefore could not be considered on appeal. Weishaar raised the issue in her post-hearing brief to the deputy commissioner. This did not afford her employer a fair opportunity to meet and rebut any evidence Weishaar might have presented to the deputy on this issue.

*Weishaar,* 506 N.W.2d at 790–91 (citations omitted).

It is interesting that, even in the present case, the workers' compensation commissioner stated "amendments at the time of the hearing *are not condoned.*" (Emphasis added.) The commissioner justified the deputy's allowance of the amendment on the grounds that "[the][d]efendants do not argue they were prejudiced by the addition of this [odd-lot] allegation, nor do they offer what other steps would have been taken in the case to prove that claimant was employable." The record does not support those conclusions. First, the employer claimed prejudice from the outset. It filed a resistance to the amendment on the ground it would be prejudiced by it. It also asserted a claim of prejudice in its brief to the commissioner in the intra-agency appeal. As to the second ground, the commissioner gave for approving the late amendment, the employer *did* state what it would do to meet its burden of production under the odd-lot doctrine: it would conduct additional discovery to ameliorate the effect of Curtin's change of testimony. We need not speculate about what that evidence might be. We say only that basic fairness requires that the employer be given a chance to produce it.

We conclude that the deputy abused his discretion in allowing the amendment under these circumstances and agree with the commissioner's observation that such amendments cannot be condoned. We therefore reverse the district court and the commissioner's ruling and remand for additional discovery, if necessary, a new hearing, and an opportunity for the employer to meet the odd-lot claim.

### III. *The Subrogation Issue.*

■ Curtin recovered underinsured-motorist benefits under an insurance policy provided by his employer. The employer and its workers' compensation carrier, United Fire and Casualty, filed a lien against the underinsured-motorist proceeds under Iowa Code section 85.22 (1997). That section, entitled "Liability of Others—Subrogation," provides in relevant part:

When an employee receives an injury ... for which compensation is payable under this chapter, ... and which injury ... is caused under circumstances creating a legal liability against some person, other than the employee's employer or any employee of such employer as provided in section 85.20 to pay damages, the employee ... may take proceedings against the employer for compensation, and the employee ... may also maintain an action against such third party for damages....

1. If compensation is paid the employee under this chapter, the employer by whom the same was paid, or the employer's insurer which paid it, shall be indemnified out of the recovery of damages to the extent of the payment so made, ... and shall have a lien on the claim for such recovery and the judgment thereon for the compensation for which the employer or insurer is liable.

In this case, the employer and its insurer argue that they are entitled to a lien on Curtin's underinsured-motorist proceeds to reimburse them for the workers' compensation benefits they have paid to Curtin. Curtin responds that the underinsured-motorist insurance carrier is not a "third party" which is obligated to pay "damages" to the worker as those terms are used in Iowa Code section 85.22. That was, in fact, our holding in *March v. Pekin Insurance Co.,* 465 N.W.2d 852 (Iowa 1991). In *March* an injured worker received workers' compensation benefits and also recovered against his own underinsured-motorist policy. The workers' com-

pensation insurer in *March* attempted to recover subrogation against the underinsured-motorist coverage. *March,* 465 N.W.2d at 852–53. We denied subrogation in *March* because section 85.22 provides for subrogation against a tortfeasor—not against a party obligated to pay under an insurance contract. *Id.*

In this case, the employer and its insurer contend that *March* must be distinguished because in that case the underinsured-motorist coverage had been purchased by the employee while in the present case the insurance was provided by the employer. We read nothing in *March,* however, that suggests that it makes any difference which party furnished insurance coverage; the right to subrogation turns on whether the fund against which subrogation is sought arose through an action for tort or breach of contract, and *March* controls; only a fund created through an action for tort may be the subject of subrogation under section 85.22. The fund at issue here was based on a contract recovery. We affirm the decision of the district court on this issue.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**