# IN THE SUPREME COURT OF IOWA

No. 12–0126

Filed May 17, 2013


**SHARON MOAD,** Individually and as Personal Representative of the ESTATE OF DOUGLAS MOAD, and as Personal Representative on behalf of TRAVIS MOAD and HEATHER JOHNSON,

Appellee,

vs.

**DAKOTA TRUCK UNDERWRITERS, RISK ADMINISTRATIVE SERVICES, INC.,**

Appellants.

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Johnson County, Nancy A. Baumgartner, Judge.


A workers' compensation carrier appeals orders extinguishing its subrogation lien and denying its motion to vacate an order approving settlement. **DECISION OF COURT OF APPEALS VACATED, JUDGMENT OF DISTRICT COURT REVERSED, AND CASE REMANDED WITH INSTRUCTIONS.**


Sasha L. Monthei of Scheldrup Blades Schrock Smith Aranza P.C., Cedar Rapids, for appellants.


Martin A. Diaz and Elizabeth J. Craig of Martin Diaz Law Firm, Iowa City, for appellee.

**APPEL, Justice.**

The question in this case is whether the law of Iowa or South Dakota should apply to determine whether a South Dakota workers' compensation carrier is entitled to subrogation for payments made to its insured by underinsured and uninsured insurance carriers arising out of a settlement resulting from third-party litigation in Iowa. Because we determine that the district court utilized the wrong standard in resolving the conflict of laws question, we reverse the judgment of the district court and remand for further proceedings.

## I. Background Facts and Prior Proceedings.

Douglas Moad worked as a truck driver for Gary Jensen Trucking Company. On December 1, 2008, Douglas was driving his truck within the course of his employment on Interstate 80 near Iowa City when Matthew Libby drove his vehicle across the median. Libby's vehicle struck Douglas's truck head-on. Tragically, Libby died at the scene and Douglas died roughly three months later due to complications resulting from his injuries.

At the time, Jensen Trucking maintained workers' compensation insurance coverage with Dakota Truck Underwriters, Risk Administrative Services, Inc. (DTU), a South Dakota corporation with its principal place of business in South Dakota. DTU issued that policy in South Dakota. Jensen Trucking also maintained underinsured and uninsured motorist liability coverage with Northland Insurance Company (Northland), a Minnesota corporation with its principal place of business in Minnesota. Douglas and his wife, Sharon Moad, a South Dakota resident, maintained automobile insurance with Property and Casualty Insurance Company of Hartford (Hartford), a Connecticut corporation with its principal place of business in Connecticut.

Following the accident, DTU filed an "employer's first report of injury" notice with the South Dakota department of labor and regulation. DTU also filed a "calculation of compensation" form with the department. The calculation of compensation form indicated DTU would pay Douglas $534.97 per week from December 2, 2008, until terminated in accordance with the workers' compensation laws of South Dakota.

On February 8, 2011, Sharon filed a petition, individually, as the personal representative of Douglas's estate, and as the personal representative of their two children, also South Dakota residents, in Iowa district court.[1] Moad sought damages from Libby's estate, Northland, and Hartford. Moad's claims against Northland and Hartford were for uninsured motorist benefits. Moad notified DTU of the petition on February 25. On May 4, DTU filed notice of a subrogation lien, asserting, under South Dakota law, that it was entitled to reimbursement from any proceeds obtained by Moad as a result of the damages action.

During the pendency of the damages action, Moad filed a claim with the Iowa workers' compensation commissioner on August 10, 2011, seeking benefits resulting from her husband's accident and death.

Moad then reached a settlement agreement with Northland and Hartford in the damages action. Northland agreed to pay $300,000, and Hartford agreed to pay $2000. Northland agreed to provide an additional $100,000 to cover DTU's asserted workers' compensation subrogation lien in the event the district court determined it was valid and enforceable. In exchange, Moad agreed to file a motion to strike or extinguish DTU's subrogation lien.

On September 12, Moad sought the district court's approval to accept the settlement. The next day, Moad filed a motion to strike or

[1]We will refer to the plaintiffs collectively as Moad.

extinguish DTU's lien, asserting that DTU failed to timely file notice of its subrogation lien within thirty days of receiving notice of the suit, *see* Iowa Code § 85.22(1) (2011), and that DTU had no right of subrogation under Iowa law. The district court approved the settlement on September 14.

On September 20, DTU filed a motion to vacate the order approving the settlement on the grounds the district court had approved the settlement before DTU could file a resistance. DTU then sought the district court's approval to intervene. The district court granted DTU's motion to intervene and set a hearing on the motion to vacate.

DTU conceded it did not have a right to reimbursement under Iowa law. It urged the district court to apply section 145 of the Restatement (Second) of Conflict of Laws, the most-significant-relationship test. In the alternative, it urged the court to apply section 185 of the Restatement (Second), which calls for application of the workers' compensation law of the state in which the employee received an award, but noted Iowa courts had yet to adopt it. The application of either test, DTU argued, would lead to the conclusion South Dakota law governed the dispute. DTU attached the calculation of compensation form to its motion as well as a balance sheet indicating it had paid $159,589.46 in benefits, which included medical payments and lost wages, between December 2, 2008, and October 3, 2009. In response, Moad argued application of either section 145 or section 185 led to the conclusion Iowa law applied.

After ordering additional briefing on the conflict of laws issue, the district court granted Moad's motion to extinguish DTU's lien and denied DTU's motion to vacate the order approving the settlement. The district court first concluded DTU failed to preserve any lien interest it had because DTU filed notice of its lien more than thirty days after it received

notice of the suit. The district court then concluded that, in the event DTU's untimely filing did not bar its interest, section 145 of the Restatement (Second) led to the conclusion that Iowa law applied and barred DTU's recovery. The district court reasoned that the injury occurred in Iowa, that Iowa was the state where the conduct causing the injury occurred, and that Iowa was the state where the workers' compensation claim was filed. It cited our decision in *Veasley v. CRST International, Inc.*, 553 N.W.2d 896, 897 (Iowa 1996), in support of its decision to apply the most-significant-relationship test.

DTU appealed, again arguing sections 145 and 185 of the Restatement (Second), the latter of which it urged us to adopt, led to the conclusion South Dakota law applied. In response, Moad asserted Iowa law applied because she filed the workers' compensation claim in Iowa and because application of section 145 led to the conclusion that Iowa law applied. DTU replied, arguing South Dakota had the most significant interest in deciding the dispute, which it characterized as contractual. We transferred the case to the court of appeals.

The court of appeals concluded Moad's claims for uninsured motorist benefits arose in contract, not tort, and therefore section 145 was inapplicable because the issue was one sounding in contract, not tort. Consequently, the court of appeals remanded the case for an application of the factors listed in section 188 of the Restatement (Second), which applies to contract actions. It also noted this court has yet to adopt section 185. Moad filed an application for further review, which we granted.

Moad's Iowa workers' compensation claim is still pending.

**II. Scope of Review.**

This appeal is premised upon whether the district court applied the correct legal standard in determining which state's law to apply. Therefore, our review is for correction of errors at law. *See Comes v. Microsoft Corp.*, 709 N.W.2d 114, 117 (Iowa 2006); *Walters v. Herrick*, 351 N.W.2d 794, 796 (Iowa 1984). The district court's findings of fact are binding on us to the extent they are supported by substantial evidence. Iowa R. App. P. 6.904(3)(*a*).

**III. Analysis.**

**A. Introduction.** DTU asserts it is entitled to a subrogation lien on proceeds paid by underinsured and uninsured insurance carriers to a claimant as a result of DTU's previous payment of workers' compensation benefits. The parties agree DTU is not entitled to subrogation from the settlement proceeds if Iowa law applies. *See Michael Eberhart Constr. v. Curtin*, 674 N.W.2d 123, 129 (Iowa 2004); *March v. Pekin Ins. Co.*, 465 N.W.2d 852, 854 (Iowa 1991). They also agree, however, that DTU has a valid and enforceable subrogation lien if South Dakota law applies. *See Kaiser v. N. River Ins. Co.*, 605 N.W.2d 193, 198 (S.D. 2000).

If South Dakota law applies, DTU argues it would have a substantial interest in challenging the settlement agreement of the parties to the Iowa litigation. DTU asserts the allocation of the settlement proceeds between injuries to DTU's insured and the consortium claim of the insured spouse were unreasonable. If DTU is entitled to subrogation, DTU argues it should be able to contest the allocation of proceeds of the settlement.

As a result, DTU asks us to reverse the district court order extinguishing its subrogation lien and to reverse the district court's order

refusing to vacate its approval of the settlement to allow DTU to challenge the settlement terms.

**B. Positions of the Parties.** DTU presents a double-barreled argument related to the conflict of laws question. First, DTU asserts that under the most-significant-relationship test of Restatement (Second) of Conflict of Laws section 145, the district court should have applied the law of South Dakota and refused to extinguish its lien. Restatement (Second) section 145 provides, in relevant part:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a) the place where the injury occurred,
> >
> > (b) the place where the conduct causing the injury occurred,
> >
> > (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> >
> > (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145, at 414 (1971) [hereinafter Restatement (Second)].

As can be seen above, section 145 incorporates section 6 of the same restatement. Section 6 provides that factors to be considered in choice-of-law determinations include:

> (a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be adopted.

*Id.* § 6(2), at 10.

In support of its argument under section 145, DTU notes the subrogation dispute involves a South Dakota employer, a South Dakota workers' compensation carrier, a South Dakota employee, and workers' compensation payments made in South Dakota. DTU argues the fact that the accident occurred in Iowa has little bearing on the resolution of the conflict of laws issue on the question of whether DTU is entitled to a subrogation lien for workers' compensation benefits already paid.

DTU zealously asserts the filing of a workers' compensation claim in Iowa should have no bearing on the question of which law applies to determine the validity of its subrogation lien. DTU emphasizes that it is seeking subrogation with respect to benefits paid prior to the filing of the Iowa workers' compensation claim. The mere filing of the Iowa claim, according to DTU, cannot somehow convert previously paid South Dakota workers' compensation benefits into Iowa benefits that are not subject to South Dakota subrogation law.

In the alternative, DTU argues the court should apply Restatement (Second) of Conflict of Laws section 185. Section 185 provides:

The local law of the state under whose workmen's compensation statute an employee has received an award for an injury determines what interest the person who paid the

> award has in any recovery for tort or wrongful death that the employee may obtain against a third person on account of the same injury.

*Id.* § 185, at 551.

According to DTU, the workers' compensation benefits already paid by its workers' compensation insurance carrier to Moad are South Dakota benefits and, as a result, the law of South Dakota should apply to determine the validity of the lien. In addition, DTU argues Iowa law does not apply because Moad's Iowa workers' compensation claim is barred by Iowa Code section 85.26. According to DTU, Moad was required to bring the Iowa workers' compensation claim under this Code section within two years of the occurrence or injury. DTU argues the filing of the Iowa workers' compensation claim on August 8, 2011, was more than two years after the accident, which occurred on December 1, 2008.

In contrast, Moad argues that under the most-significant-relationship test of Restatement (Second) section 145, Iowa law should apply on the subrogation question. Moad points out that the injury occurred in Iowa and that the conduct occurred in Iowa. Moad notes the relationship with DTU is centered in Iowa because of the filing of the workers' compensation claim in this state.

In the alternative, Moad argues Iowa law should apply even if the court were to apply Restatement (Second) section 185. Moad argues the ultimate determination of what benefits she will receive will be made under Iowa law because she filed the workers' compensation petition in Iowa. Moad argues the Iowa workers' compensation system will determine whether Douglas's injuries and death arose out of and in the course of employment and will determine what benefits she is entitled to receive under the Iowa workers' compensation system.

In addition, Moad asserts the Iowa workers' compensation claim was timely filed. Moad notes Iowa Code section 85.72(3) provides that "[b]enefits paid in another state or country constitute weekly compensation benefits for the purposes of sections 85.26 and 86.13." As a result, Moad argues the workers' compensation claim is timely under Iowa Code section 85.26. Moad further notes that the Iowa workers' compensation commissioner has denied a motion for summary judgment based on timeliness and that DTU cannot collaterally attack the agency's ruling on the issue.

**C. Approaches of Other Jurisdictions to Conflict of Laws Issues Involving Subrogation of Payments Made as a Result of Underinsured or Uninsured Motorist Coverage.**

1. *Lex loci delicti.* Some jurisdictions use the rule of *lex loci delicti* and apply the law of the state in which the accident occurred. *See, e.g., Ne. Utils., Inc. v. Pittman Trucking Co.*, 595 So. 2d 1351, 1353–54 (Ala. 1992); *Tyson Foods, Inc. v. Craig*, 597 S.E.2d 520, 521 (Ga. Ct. App. 2004); *see also O'Neal v. Kennamer*, 958 F.2d 1044, 1046–47 (11th Cir. 1992); *Maryland Cas. Ins. Co. v. Glomski*, 437 S.E.2d 616, 617 (Ga. Ct. App. 1993). The place-of-the-wrong rule stems from a characterization of the action as one of tort because a tort, or alleged tort, ultimately gave rise to the subrogation claim. While this approach has the benefit of clarity, it turns on the happenstance of geography, which may not fairly reflect the interests of the parties or the jurisdictions involved.

2. *Restatement (Second) of Conflict of Laws section 145.* Other jurisdictions apply the most-significant-relationship test of section 145 of the Restatement (Second) in the context of a subrogation claim. *See, e.g., ITT Specialty Risk Servs. v. Avis Rent A Car Sys., Inc.*, 985 P.2d 43, 47 (Colo. App. 1998). The advantage, and the disadvantage, of applying

section 145 is its flexibility. Section 145 is designed to give courts maximum leeway in determining which law to apply, but because it involves application of a multifactor test, predictability is undermined.

3. *Restatement (Second) of Conflict of Laws section 188.* Restatement (Second) section 188 generally relates to determining the most significant relationship in the contractual context. The contacts to be considered under section 188 are:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) § 188(2), at 575.

The parties have not cited to us a subrogation lien case where a court directly applied section 188.

4. *Restatement (Second) of Conflict of Laws section 185.* A number of jurisdictions apply section 185 of the Restatement (Second) to cases involving subrogation in the context of workers' compensation benefits. Multiple jurisdictions have applied section 185 in cases involving the subrogation rights of workers' compensation carriers in out-of-state litigation. *See, e.g., Miller v. Dorr,* 262 F. Supp. 2d 1233, 1237–38 (D. Kan. 2003); *Brown v. Globe Union,* 694 F. Supp. 795, 798–99 (D. Colo. 1988); *Langston v. Hayden,* 886 S.W.2d 82, 85 (Mo. Ct. App. 1994); *Billingsley v. JEA Co.,* 836 P.2d 87, 90 (N.M. Ct. App. 1992); *Am. Interstate Ins. Co. v. G & H Serv. Ctr., Inc.,* 861 N.E.2d 524, 527 (Ohio 2007); *Allen v. Am. Hardwoods,* 795 P.2d 592, 595 (Or. Ct. App. 1990);

*see also Boyle v. Texasgulf Aviation, Inc.*, 696 F. Supp. 951, 953–54 (S.D.N.Y. 1988) (noting the law of New York is consistent with section 185); *ITT Specialty Risk Servs.*, 985 P.2d at 47–48 (applying section 185 to supplement its conclusion under the section 145 tort analysis); *Kolberg v. Sullivan Foods, Inc.*, 644 N.E.2d 809, 811 (Ill. App. Ct. 1994) (applying section 185 in attorney fee dispute between the claimant's law firm and the workers' compensation provider's law firm following settlement with third-party tortfeasor). *But see Oberson v. Federated Mut. Ins. Co.*, 126 P.3d 459, 462–63 (Mont. 2005) (refusing to apply section 185 and determining an insurer was not entitled to subrogation against a worker's third-party personal injury award based on a provision of the Montana Constitution prohibiting subrogation).

Section 185 is one of three sections in the Restatement (Second) pertaining to application of the most-significant-relationship test in cases involving conflicting workers' compensation statutes. *Anderson v. Commerce Constr. Servs., Inc.*, 531 F.3d 1190, 1194 n.5 (10th Cir. 2008); *see also* Restatement (Second) §§ 183–85, at 543–55.

Support for application of section 185 is found in its comments:

> Situations arise where an employee while acting in the course of his employment is injured by the wrongful conduct of a third party who is not declared immune from liability for tort or wrongful death by an applicable workmen's compensation statute (see § 184). In such situations, the third party remains liable even after an award has been rendered and paid. The workmen's compensation statutes differ as to what interest the person who has paid the award has in the recovery on the cause of action against the third party. Under some statutes, acceptance of compensation by an injured employee or his dependents terminates his rights against the third party. In such a case, only the person who has paid the award (either the employer or an insurer) has an interest in the cause of action. Other statutes provide, however, that the person who has paid the award shall be

reimbursed out of the proceeds of the judgment, and that the employee shall receive any sum that may remain.

*Id.* § 185 cmt. *a*, at 551–52. As noted by the Supreme Court of Ohio, "[T]he Restatement has eliminated the need to weigh states' interests in having their laws applied and has determined that when it comes to workers' compensation claims, the laws of the state in which the compensation was paid will always apply." *Am. Interstate Ins. Co.*, 861 N.E.2d at 527. That court also noted its application of section 185 was consistent with precedent recognizing "that workers' compensation statutes represent 'a social bargain in which employers and employees exchange their respective common-law rights and duties for a more certain and uniform set of statutory benefits and obligations.' " *Id.* (quoting *Holeton v. Crouse Cartage Co.*, 748 N.E.2d 1111, 1116 (Ohio 2001)).

**D. Iowa Caselaw.** While some jurisdictions cling to the *lex loci delicti* approach in tort cases, we have abandoned the place-of-the-wrong rule in tort actions in favor of the most-significant-relationship test found in section 145 of the Restatement (Second). *See Veasley*, 553 N.W.2d at 897. As a result, even if the outcome in this case were to be determined according to our conflict of laws analysis of tort cases, we would not apply the place-of-the-wrong rule.

While *Veasley* stands for the proposition that we will generally apply section 145 of the Restatement (Second) in tort cases, it does not provide controlling authority for the question we face in this case. *Veasley* was a tort action brought by an employee against a vehicle owner for the negligence of a coemployee. *Id.* *Veasley* did not involve the question of which conflict of laws rule should be applied in the context of a workers' compensation carrier's subrogation claim in an action

involving recovery of insurance proceeds from underinsured and uninsured insurance carriers.

We have applied section 188 of the Restatement (Second) in a number of contractual contexts. For instance, in insurance cases generally, we have applied section 188. *See, e.g., Gabe's Constr. Co. v. United Capitol Ins. Co.*, 539 N.W.2d 144, 146 (Iowa 1995); *Cole v. State Auto & Cas. Underwriters*, 296 N.W.2d 779, 781 (Iowa 1980).

We have not as yet specifically adopted Restatement (Second) section 185 in determining conflict of laws questions related to subrogation in the context of workers' compensation benefits. Unlike the more general sections of the Restatement directed at tort or contract disputes, Restatement (Second) section 185 is narrowly tailored to address the specific problem posed in this case.

**E. Discussion.** Based on our review of the applicable provisions of the Restatement (Second) and the conflict of laws caselaw, we conclude there are sound reasons for applying section 185 to this case. Although conflict rules are rarely perfect, section 185 in most cases will provide a clear rule of decision for workers' compensation carriers and claimants alike. Because workers' compensation is designed to be an efficient method for dealing with workplace injuries, we view the application of section 185 as superior to the more open-ended considerations of the most-significant-relationship tests.

Because the district court did not apply section 185, we remand the case for further proceedings. We note, however, that upon remand section 185 may apply to all, part, or none of the lien asserted by DTU. To the extent DTU's lien is not within the scope of section 185, we conclude the conflict issue is controlled by section 145 of the Restatement (Second) rather than section 188. There is little authority

for the proposition that subrogation claims arising out of tort cases are subject to section 188. To the extent Restatement (Second) section 185 does not apply, we adopt the majority view that Restatement (Second) section 145 provides the proper approach to determining subrogation rules in a cause of action for personal injuries.

Accordingly, we remand the case to the district court to consider the extent to which section 185 of the Restatement (Second) applies in this case.[2] The district court orders extinguishing DTU's lien and denying DTU's motion to vacate the order approving the settlement are vacated pending resolution of the conflict issue upon remand to the district court.

---

[2]The district court also ruled the lien was invalid for failure to comply with the requirement of Iowa Code section 85.22(1) that notice of the lien be filed within thirty days of receipt of the original notice of the underlying action. In a footnote, DTU argues that the question of whether the thirty-day limitation of section 85.22(1) applies depends upon the ultimate issue in this case, namely, whether the law of South Dakota or Iowa applies to determine the rights of DTU. Moad does not respond to this issue in her brief. In any event, section 85.22 only applies to liens against recovery against a "third party" which, under Iowa law, does not include recovery under uninsured and underinsured motorist policies. *See Michael Eberhart Constr. v. Curtin*, 674 N.W.2d 123, 129 (Iowa 2004); *March v. Pekin Ins. Co.*, 465 N.W.2d 852, 854 (Iowa 1991). Because section 85.22 has no application to DTU's effort to obtain a lien, the district court erred in extinguishing the lien on this ground.

DTU also asserts Moad's Iowa workers' compensation claim is not timely and that, as a result, Iowa law does not provide a basis for deciding the conflict issue in this case. DTU notes that under Iowa Code section 85.26(1), a workers' compensation claim must be brought within two years of the injury. DTU claims that since the Iowa workers' compensation claim was filed more than two years after the accident, it is time barred. In Moad's workers' compensation petition, however, Moad seeks only payment of additional death benefits that the insurer has not paid. With respect to any future benefits ordered by the Iowa workers' compensation commission, DTU disclaims any lien rights. Thus, the issue of whether the Iowa workers' compensation claim is timely has no bearing on the key issue, namely, whether payments already made by the South Dakota insurer constituted an "award" under South Dakota law. Accordingly, we need not address the issue.

**IV. Conclusion.**

For the reasons stated above, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand to the district court for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED, JUDGMENT OF DISTRICT COURT REVERSED, AND CASE REMANDED WITH INSTRUCTIONS.**